# 21-1686-cv(L), 21-1712-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

NMR E-TAILING, LLC,

*Plaintiff,*

– v. –

SHALINI AHMED, I.I. 1, a minor child, by and through his next freinds IFIKAR and SHALINI AHMED, his parents, I.I. 2, a minor child, by and through his next freinds IFTIKAR and SHALANI AHMED, his parents, I.I. 3, a minor child, by and through his next freinds IFTIKAR and SHALINI AHMED, his parents, I-CUBED DOMAINS, LLC, SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST, DIYA HOLDINGS, LLC, DIYA REAL HOLDINGS, LLC, IFTIKAR A. AHMED,

*Defendants-Appellants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## JOINT APPENDIX
## Volume 2 of 2 (Pages A-165 to A-267)

ADAM G. UNIKOWSKY
JENNER & BLOCK LLP
*Attorneys for Defendants-Appellants*
  *Shalini Ahmed, I.I. 1, I.I. 2, I.I. 3,*
  *I-Cubed Domains, LLC, Shalini*
  *Ahmed 2014 Grantor Retained*
  *Annuity Trust, Diya Holdings, LLC*
  *and Diya Real Holdings, LLC*
1099 New York Avenue, NW
  Suite 900
Washington, DC 20001
(202) 639-6000

VINCENT LEVY
GREGORY DUBINSKY
ANDREW C. INDORF
HOLWELL SHUSTER & GOLDBERG LLP
*Attorneys for Defendant-Appellant*
  *Iftikar A. Ahmed*
425 Lexington Avenue
New York, New York 10017
(646) 837-5151

*(For Continuation of Appearances See Inside Cover)*

IFTIKAR ALI AHMED SOLE PROP,

*Defendants,*

v.

JED HORWITT,

*Receiver-Appellee.*

CHRISTOPHER H. BLAU
STEPHEN M. KINDSETH
ZEISLER & ZEISLER, P.C.
*Attorneys for Receiver-Appellee*
  *Jed Horwitt*
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
(203) 368-4234

STEPHEN G. YODER
UNITED STATES SECURITIES AND
  EXCHANGE COMMISSION
*Attorney for Plaintiff-Appellee*
  *United States Securities and*
  *Exchange Commission*
100 F Street, NE
Washington, DC 20549
(202) 551-4532

i

# TABLE OF CONTENTS

| | Page |
|---|---|
| Civil Court Docket Entries ....................................... | A-1 |
| Ruling on Defendant's and Relief Defendants' Objections to Plaintiff SEC's Proposed Final Judgment [Dkt. No. 986] .................................... | A-139 |
| Notice of Appeal of Iftikar A. Ahmed, dated September 27, 2018 [Dkt. No. 988]...................... | A-143 |
| Notice of Appeal of Iftikar A. Ahmed, dated September 28, 2018 [Dkt. No. 992]...................... | A-147 |
| Notice of Appeal of Iftikar A. Ahmed, dated December 24, 2018 [Dkt. No. 1083] .................... | A-151 |
| Notice of Appeal of Iftikar A. Ahmed, dated December 24, 2018 [Dkt. No. 1084] .................... | A-155 |
| Notice of Appeal of Relief Defendants, dated February 8, 2019 [Dkt. No. 1100] ........................ | A-158 |
| Notice of Appeal of Iftikar A. Ahmed, dated February 8, 2019 [Dkt. No. 1101] ........................ | A-162 |
| Notice of Appeal of Iftikar A. Ahmed, dated June 18, 2019 [Dkt. No. 1277]...................................... | A-165 |
| Notice of Appeal of Relief Defendants, dated October 16, 2019 [Dkt. No. 1298]........................ | A-167 |
| Notice of Appeal of Iftikar A. Ahmed, dated October 18, 2019 [Dkt. No. 1305]........................ | A-170 |
| Notice of Appeal of Iftikar A. Ahmed, dated January 23, 2020 [Dkt. No. 1428]...................................... | A-172 |
| Notice of Appeal of Iftikar A. Ahmed, dated January 27, 2020 [Dkt. No. 1429]...................................... | A-174 |

ii

**Page**

Notice of Appeal of Relief Defendants, dated March
13, 2020 [Dkt. No. 1519].......................................  A-176

Notice of Appeal of Iftikar A. Ahmed, dated
December 3, 2020 [Dkt. No. 1717] ......................  A-178

Transcript of Oral Argument, dated May 18, 2021....  A-181

Notice of Appeal of Iftikar A. Ahmed, dated July 8,
2021 [Dkt. No. 2019].............................................  A-264

Notice of Appeal of Relief Defendants, dated July 9,
2021 [Dkt. No. 2013].............................................  A-266

A-165

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                Plaintiff,

    v.                              Civil Action No. 3:15-cv-675 (JBA)

IFTIKAR AHMED,

                Defendant, and

IFTIKAR AHMED SOLE PROP; *et al*

                Relief Defendants.                   June 18TH, 2019

## NOTICE OF APPEAL ON RULING ON MOTIONS TO LIFT LITIGATION STAY
## [DOC. #1167]

      Notice is hereby given that the *pro se* Defendant in the above mentioned case, hereby

appeals to the United States Court of Appeals for the Second Circuit from ruling on motion to lift

litigation stay that the district court entered:

      1.      Ruling on Motions to Lift Litigation Stay [Doc. #1167 dated 12TH May 2019].

                              Respectfully Submitted,

Dated:      June 18TH, 2019        /s/ Iftikar Ahmed

                                    _____
                                    Iftikar A. Ahmed
                                    C/O Advocate Anil Sharma
                                    Government Place East
                                    Kolkata 700069, India
                                    Tel: +91.98.30.089.945
                                    Email: iftyahmed@icloud.com
                                    *Pro Se*

1

A-166

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com

A-167

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                    )
UNITED STATES SECURITIES AND                        )
EXCHANGE COMMISSION,                                 )    No. 3:15-CV-675 (JBA)
                                                    )
                        Plaintiff,                  )
                                                    )
            v.                                      )
                                                    )
IFTIKAR AHMED,                                      )
                        Defendant, and              )
                                                    )
IFTIKAR ALI AHMED SOLE PROP; I-CUBED                )
DOMAINS, LLC; SHALINI AHMED; SHALINI                )
AHMED 2014 GRANTOR RETAINED ANNUITY                 )
TRUST; DIYA HOLDINGS LLC; DIYA REAL                 )
HOLDINGS, LLC; I.I. 1, a minor child, by and        )
through his next friends IFTIKAR and SHALINI        )
AHMED, his parents; I.I. 2, a minor child, by and   )
through his next friends IFTIKAR and SHALINI        )
AHMED, his parents; and I.I. 3, a minor child, by   )
and through his next friends                        )
IFTIKAR and SHALINI AHMED, his parents,             )
                                                    )    OCTOBER 16, 2019
                        Relief Defendants.          )
_____)


## NOTICE OF APPEAL


Relief Defendants Shalini Ahmed, her three minor children I.1, I.2, and I.3, I-Cubed

Domains, LLC, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC,

DIYA Real Holdings LLC (together, the "Relief Defendants"), hereby appeal to the United

States Court of Appeals for the Second Circuit from this Court's Ruling Denying Defendant's

Motion to Alter Final Judgment dated September 4, 2019.

A-168

Respectfully Submitted,

By:/s/ Paul E. Knag
Paul E. Knag – ct04194
pknag@murthalaw.com
Kristen L. Zaehringer – ct27044
kzaehringer@murthalaw.com
Murtha Cullina LLP
177 Broad Street, 16th Floor
Stamford, Connecticut 06901
Telephone: 203.653.5400
Facsimile:  203.653.5444


*Attorneys for Relief Defendants*
*I-Cubed Domain, LLC, Shalini Ahmed,*
*Shalini Ahmed 2014 Grantor Retained*
*Annuity Trust, Diya Holdings, LLC, Diya*
*Real Holdings, LLC, I.I. 1, I.I. 2 and I.I. 3*

2

A-169

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing RELIEF DEFENDANTS'

RESPONSE IN OPPOSITION TO RECEIVER'S SECOND APPLICATION FOR FEES AND

EXPENSES will be sent by e-mail to all parties by operation of the Court's electronic filing

system or by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

<u>/s/ Paul E. Knag</u>
Paul E. Knag – ct04194

A-170

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:15-cv-675 (JBA) |
| IFTIKAR AHMED, | |
| Defendant, and | |
| IFTIKAR AHMED SOLE PROP; *et al* | |
| Relief Defendants. | October 18TH, 2019 |

## DEFENDANT'S NOTICE OF APPEAL

The *pro se* Defendant hereby appeals to the United States Court of Appeals for the Second Circuit from this Court's Ruling [Doc. 1263] dated September 04, 2019 denying the Defendant's Motion [Doc. 1086] to Alter Final Judgment [Doc. 1054] under Federal Rule of Civil Procedure 59(e).

Respectfully Submitted,

Dated:      October 18TH, 2019          /s/ Iftikar Ahmed

_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel:     +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

1

A-171

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com

**A-172**

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>Defendant, and<br><br>IFTIKAR AHMED SOLE PROP; *et al*<br><br>Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA)<br><br><br><br>January 23RD, 2020 |

## NOTICE OF APPEAL ON RULING GRANTING RECEIVER'S MOTIONS FOR FEES [DOC. #1415]

Notice is hereby given that the *pro se* Defendant in the aforementioned case, hereby appeals to the United States Court of Appeals for the Second Circuit from ruling on Receivers motions for fees that the district court entered:

    1.    Ruling Granting Receiver's Motions for Fes [Doc. #1415 dated 22ND January 2020].

Respectfully Submitted,

Dated:    January 23RD, 2020

/s/ Iftikar Ahmed
_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com
*Pro Se*

1

A-173

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

Mr. Nicholas P. Heinke, *Esq.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

Mr. Mark L. Williams, *Esq.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

Mr. Paul E. Knag, *Esq.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

Ms. Kristen Luise Zaehringer, *Esq.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com

A-174

STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

Plaintiff,

v.                                                    Civil Action No. 3:15-cv-675 (JBA)

IFTIKAR AHMED,

Defendant, and

IFTIKAR AHMED SOLE PROP; *et al*

Relief Defendants                                     January 27TH, 2020

---

**DEFENDANT'S NOTICE OF APPEAL ON ORDER DIRECTING PAYMENT OF
RECEIVER'S APPROVED FEES AND EXPENSES [DOC. #1419]**

Notice is hereby given that the *pro se* Defendant in the aforementioned case, hereby

appeals to the United States Court of Appeals for the Second Circuit from Order Directing

Payment of Receiver's Approved Fees and Expenses [Doc. #1419] that the district court entered:

1.   Order Directing Payment of Receiver's Approved Fees and Expenses [Doc. #1419
     dated 27 January 2020].

Respectfully Submitted,


Dated:        January 27TH, 2020        /s/ Iftikar Ahmed
                                        _____
                                        Iftikar A. Ahmed
                                        C/O Advocate Anil Sharma
                                        Government Place East
                                        Kolkata 700 069, India
                                        Tel:    +91-983-008-9945
                                        e-mail: iftyahmed@icloud.com

                                        *Pro Se*

1

A-175

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com

**A-176**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | No. 3:15-CV-675 (JBA) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| IFTIKAR AHMED, | ) ) | |
| Defendant, and | ) ) | |
| IFTIKAR ALI AHMED SOLE PROP; *et al* | ) ) | |
| Relief Defendants. | ) ) | MARCH 13, 2020 |

## NOTICE OF APPEAL

Notice is hereby given that Shalini Ahmed, her three minor children I.I. 1, I.I. 2, and I.I. 3, I-Cubed Domains, LLC, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC, and DIYA Real Holdings, LLC, Relief Defendants in the above-captioned case, hereby appeal to the United States Court of Appeals for the Second Circuit from this Court's (1) Ruling Granting Receiver's Motions for Fees (ECF No. 1415) dated January 22, 2020 and (2) Order Directing Payment of Receiver's Approved Fees and Expenses (ECF No. 1419) dated January 27, 2020.

Respectfully Submitted,

By: */s/ Paul E. Knag*
　　Paul E. Knag – ct04194
　　pknag@murthalaw.com
Murtha Cullina LLP
177 Broad Street, 16th Floor
Stamford, Connecticut 06901
Telephone: 203.653.5400
Facsimile:  203.653.5444
*Attorneys for Relief Defendants Shalini Ahmed,*
*I.I. 1, I.I. 2 and I.I. 3, I-Cubed Domain, LLC,*
*Shalini Ahmed 2014 Grantor Retained Annuity*
*Trust, Diya Holdings, LLC, Diya Real Holdings, LLC*

A-177

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of March, 2020, a copy of the foregoing NOTICE OF APPEAL will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

_/s/ Paul E. Knag_____
Paul E. Knag – ct04194

2

10625316v1

A-178

STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                    Plaintiff,

            v.                                                    Civil Action No. 3:15-cv-675 (JBA)

IFTIKAR AHMED,

                    Defendant, and

IFTIKAR AHMED SOLE PROP; *et al*

                    Relief Defendants                  December 03RD, 2020

**DEFENDANT'S NOTICE OF APPEAL ON RULING ##1661, 1675, AND 1680**

        Notice is hereby given that the *pro se* Defendant in the aforementioned case, hereby

appeals to the United States Court of Appeals for the Second Circuit from the following Orders

and Rulings that the District Court entered:

1.    Ruling Denying Defendant's Emergency Motion For Clarification Or Reconsideration

       [Doc. #1661 dated 08 October 2020];

2.    Ruling Denying Defendant's Emergency Motion To Enjoin The Enforcement Of The

       Default Judgment Obtained In Violation Of This Court's Injunction And Impose Sanctions

       On NMR Or In The Alternative, To Impose Sanctions On NMR, Release Fees To Retain

       Counsel In The New York State Proceeding To Defend Against The Default  Judgment

       And NMR E-Tailing's Alleged  Claims To Stay The NMR Case Pending Appellate

       Review [Doc. #1675 dated 30 October 2020]; and

1

A-179

3.      Ruling Denying Defendant's Motion To Reduce Disgorgement In This Case For The

Default Judgment Entered Against Him In The NMR E-Tailing New York State

Proceeding [Doc. #1680 dated 05 November 2020].


                                        Respectfully Submitted,


Dated:          December 03RD, 2020        /s/ Iftikar Ahmed

                                        _____
                                        Iftikar A. Ahmed
                                        C/O Advocate Anil Sharma
                                        Government Place East
                                        Kolkata 700 069, India
                                        Tel:    +91-983-008-9945
                                        e-mail: iftyahmed@icloud.com

                                        *Pro Se*

A-180

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com

1

```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT
 2

 3   _____)
                                   )
 4   UNITED STATES SECURITIES       )
     AND EXCHANGE COMMISSION,        ) No. 3:15-cv-00675-JBA
 5                                   )
                    Plaintiff,       ) May 18, 2021
 6                                   )
                                     ) 10:14 a.m.
 7   v.                              )
                                     ) 141 Church Street
 8                                   ) New Haven, Connecticut
     AHMED, ET AL.,                  )
 9                                   )
                    Defendants.      )
10   _____)

11

12

13              VIDEOCONFERENCE ORAL ARGUMENT

14

15

16   B E F O R E:

17        THE HONORABLE JANET BOND ARTERTON, U.S.D.J.

18

19

20

21

22

23              Official Court Reporter:
                Melissa J. Cianciullo, RDR, CRR, CRC
24              (203) 606-1794

25
```

2

```
1   A P P E A R A N C E S :

2   For the Plaintiff:

3       U.S. SECURITIES AND EXCHANGE COMMISSION
            100 F Street, NE
4           Washington, DC 20549
            (202) 551-4532
5           Email: yoders@sec.gov
        BY:  STEPHEN YODER, ESQ.
6
        U.S. SECURITIES AND EXCHANGE COMMISSION
7           1961 Stout Street, Suite 1700
            Denver, CO 80294
8           (303) 844-1000
            Email: williamsml@sec.gov
9       BY:  MARK LANDER WILLIAMS, ESQ.

10
    For the Defendant Iftikar Ahmed:
11
        HOLWELL SHUSTER & GOLDBERG LLP
12          425 Lexington Avenue
            New York, NY 10017
13          (646) 837-5120
            Email: vlevy@hsgllp.com
14      BY:  VINCENT LEVY, ESQ.

15
    For the Relief Defendants:
16
        MURTHA CULLINA LLP
17          107 Elm Street
            Four Stamford Plaza, Suite 1101
18          Stamford, CT 06902
            (203) 653-5400
19          Email: pknag@murthalaw.com
        BY:  PAUL E. KNAG, ESQ.
20

21

22

23

24

25
```

```
1            THE COURT:  Good morning, Counsel.  We are
2    here in the matter of the SEC v. Ahmed, et al.,
3    15-CV-675.
4            There are a number of people who are
5    reflected as being on this call.  Could I please have
6    appearances as to only those people who will be
7    arguing today and on whose behalf.  Let's start with
8    the SEC.
9            MR. WILLIAMS:  Good morning, Your Honor.
10   This is Mark Williams on behalf of the Securities and
11   Exchange Commission.  Mr. Stephen Yoder is here as
12   well.  I'll let him introduce himself.
13           MR. YODER:  Thank you, Your Honor.  This is
14   Stephen Yoder.
15           THE COURT:  And will you be arguing,
16   Mr. Yoder, or will it be Mr. Williams?  It will
17   depend on the issue?
18           MR. YODER:  Correct, it depends on the issue,
19   Your Honor.  I will be arguing legal issues
20   pertaining to the NDAA.
21           THE COURT:  Okay.
22           MR. YODER:  And Mr. Williams will handle
23   other arguments.  Sorry, Your Honor.
24           THE COURT:  Thank you.
25           The relief defendants.
```

A-184

4

1          MR. KNAG:  Your Honor, this is Paul Knag from

2     Murtha Cullina.  I represent the relief defendants.

3          THE COURT:  All right.  And you will be

4     handling the argument; is that correct?

5          MR. KNAG:  Yes, Your Honor.

6          THE COURT:  Thank you.

7          For Mr. Ahmed.

8          MR. LEVY:  Good morning, Your Honor.  This is

9     Vincent Levy of Holwell Shuster & Goldberg.  I'll be

10    presenting argument here today on behalf of

11    Mr. Ahmed.

12         THE COURT:  All right.  Now, I know there is,

13    from the briefing, a substantial amount of overlap.

14    Can I ask that the defendants' argument be -- or the

15    relief defendants' arguments not be repetitious.

16         MR. KNAG:  Yes, Your Honor.  Mr. Levy is

17    going to take the lead and will cover much of the

18    arguments, and I will chime in on issues that he may

19    not have mentioned.

20         THE COURT:  Very well.  Thank you.

21         Is there anyone else who will be arguing

22    today?  All right.  Hearing nothing, we will proceed.

23         So the Second Circuit has directed that the

24    motion for limited remand is granted and the appeals

25    are remanded to the district court for a

5

1    determination of appellant's disgorgement obligation

2    consistent with Section 6501 of the National Defense

3    Authorization Act and, if appropriate, an entry --

4    excuse me, entry of an amended judgment.  That is why

5    we are here today.

6         The National Defense Authorization Act that

7    is at issue provides that the amendments made by

8    subsection A shall apply with respect to any action

9    or proceeding that is pending on or commenced on or

10    after the date of enactment of this act.

11         That being the case, it seemed to me that it

12    is appropriate to have counsel address the issue of

13    pending and do so in a way that is reflective of an

14    understanding of what each side has been arguing.  So

15    we'll start with the issue of how do you determine

16    what a pending case is in this context?

17         And I'll invite Mr. Levy.  No.  I'm going to

18    invite Mr. Yoder to start.

19         MR. YODER:  Thank you, Your Honor.

20         The commission's position is that whether our

21    case is pending should be determined by the standard

22    articulated by the Supreme Court in the *Plaut*

23    decision cited in our brief.  That's *Plaut v.*

24    *Spendthrift Farm*.  In that case the Supreme Court

25    drew the distinction from which judgments of all

1    appeals have been foregone or completed and judgments

2    that remain on appeal which is --

3          MR. KNAG:  I'm getting a big feedback from

4    Mr. Williams's comments and I'm having --

5          THE COURT:  Mr. Williams is not speaking.

6          MR. KNAG:  I'm sorry.  Mr. Yoder.

7          MR. YODER:  Okay.  I'm not sure how to

8    correct that.  I apologize.  I can see if I can put

9    my own volume down here.  Is that better?

10         THE COURT:  Mr. Knag, you want to check your

11   connection and see if it might be at your end?

12         MR. KNAG:  I can't tell that it is, but I'll

13   understand that we've done what we can.

14         THE COURT:  All right.  If you think there's

15   more that can be done by way of rebooting or

16   anything, let us know.  Okay?

17         MR. KNAG:  Yes, Your Honor.

18         THE COURT:  All right.  Mr. Yoder, please

19   continue.

20         MR. YODER:  Thank you.

21         This case was -- this judgment of this Court

22   was pending on appeal when Congress enacted the

23   National Defense Authorization Act.  Because all

24   appeals had not yet been completed, this case was

25   pending as of the date of the act, in the

1    commission's position.

2          The commission understands that Mr. Ahmed

3    takes the position that the case was not pending

4    because the commission had not filed a cross-appeal.

5    The commission rests on our brief in terms of why we

6    believe it would be unreasonable to expect the

7    commission to file a protective cross-appeal in order

8    to preserve the application of the statute according

9    to its natural terms as enacted by Congress.

10         So that's the commission's position in a

11   nutshell with respect to the term "pending."  I'm

12   happy to elaborate if Your Honor has any questions

13   about the distinction that I've drawn based on the

14   *Plaut* decision.

15         THE COURT:  What would a protective

16   cross-appeal look like, Mr. Yoder?

17         MR. YODER:  Your Honor, my understanding,

18   based on what Mr. Ahmed has said, is that the

19   commission would be unable to seek the relief that

20   Congress provided under the NDAA unless it filed a

21   cross-appeal from this Court's judgment awarding

22   disgorgement.  The reason I say it would be a

23   protective cross-appeal is because the commission

24   prevailed in Your Honor's judgment with respect to

25   disgorgement within the limits then allowed by the

1   law as articulated by the Supreme Court in the *Kokesh*

2   decision.  Because the commission failed, the

3   commission had no reason to file its own appeal from

4   that disgorgement of the Court.

5           THE COURT:  Did the SEC have any basis for

6   filing a cross-appeal if *Kokesh* was the law?

7           MR. YODER:  Given that *Kokesh* was the law, we

8   do not believe the commission had a basis for filing

9   a cross-appeal on that.

10          THE COURT:  So what would a protective

11  cross-appeal look like?

12          MR. YODER:  It would be a notice of appeal

13  filed by the commission with the Second Circuit

14  basically stating that the commission is lodging a

15  cross-appeal in order to guarantee whatever rights

16  might attach should Congress enact a new statute that

17  might expand the available relief while the appeal is

18  pending.  So it would not actually raise any issues

19  of its own per decision by the Second Circuit, but it

20  would simply note as a marker or as a placeholder

21  that the commission wants to be able to take

22  advantage of any statute that Congress might enact.

23          And so, really, because we would not be

24  challenging your Honor's judgment, it would be pure

25  formality.  There wouldn't really be no such thing as

1   protective cross-appeal.  It would be form without

2   substance.

3          THE COURT:  All right.  Thank you.

4          Mr. Levy, would the cross-appeal that the

5   defendant looks at the absence of as determining

6   whether the case is pending for jurisdictional

7   purposes, how would a cross-appeal in your view have

8   been applicable?  And if the SEC had filed what

9   Mr. Yoder calls a placeholder cross-appeal, given the

10  lack of specificity it necessarily would have had

11  since the new statute hadn't come into effect, how

12  would that change what the Second Circuit was

13  remanding for?

14         Mr. Levy, please unmute yourself.

15         MR. LEVY:  Thank you.  I was not able to

16  unmute myself, Your Honor.  I apologize.

17         THE COURT:  I understand that now.  This is

18  central operations here.  We will get on it.

19         All right.  Can you address my question,

20  please?

21         MR. LEVY:  Yes.  Thank you, Your Honor.

22         I think there are two points in response.

23  First, and to directly address Your Honor's question

24  about what the appeal would look like that we're

25  saying it's lacking, it would just be a notice of

1    cross-appeal with respect to the judgment ordering

2    disgorgement.  And the SEC did have a basis to

3    cross-appeal that judgment.  Indeed in its briefing

4    before this Court, in its opening brief at note 2, it

5    says that it disagreed with a part of the Court's

6    judgment that gave Mr. Ahmed a $2 million credit

7    toward disgorgement and reduced what the SEC was

8    seeking.

9            So, in fact, as a result of the disgorgement

10   order, the SEC was an aggrieved party and could have

11   filed a notice of appeal simply stating -- or a

12   notice of cross-appeal simply stating that it was

13   challenging Your Honor's disgorgement order.  That

14   would have brought up the judgment on appeal from its

15   perspective and allowed it to get by the

16   well-established rule that the Second Circuit and the

17   Supreme Court have recognized prohibiting an appellee

18   from seeking enlarged damages that may be applicable

19   to their cross-appeal.

20           THE COURT:  But there's no issue, as I

21   understand it, with respect to a recalculation of the

22   disgorgement figure related to the $2 million -- $2

23   million that the Court did not find against

24   Mr. Ahmed.  So I don't understand what that has to do

25   with anything.

1          MR. LEVY:  Well, Your Honor, the point is

2     that the SEC had a basis to cross-appeal.  And if it

3     had done that, then it would have satisfied the

4     requirement set forth in cases that a cross-appeal is

5     required to enlarge the extended damages.  Having not

6     done that, the judgment, as far as the SEC is

7     concerned, in terms of enlarging its ability to

8     obtain a remedy is final.  And the Supreme Court made

9     that clear in the *Greenlaw* case which was -- a case

10    where -- filed what was --

11         THE COURT:  You're phasing in and out.

12         MR. LEVY:  I apologize, Your Honor.

13         THE COURT:  Okay.  If you could start back to

14    as far as the SEC is concerned, in terms of enlarging

15    its remedy, the Supreme Court made that clear in --

16    could you pick up there?

17         MR. LEVY:  I will try, Your Honor.  I was

18    getting to the *Greenlaw* case.  If I could back up.

19         THE COURT:  Yes, I'd like to get to the

20    *Greenlaw* case because I thought that it reflected

21    that there was a split in the circuits as to whether

22    or not the failure to file a cross-appeal is

23    jurisdictional or one of practice.

24         MR. LEVY:  So if I could just back up, I

25    think the rule in the Second Circuit has long been,

1    and that's reflected in the *International Ore* case

2    from 1994, Second Circuit decision that a

3    cross-appeal --

4            THE COURT:  I'm sorry.  I'm sorry.

5    Something's going wrong here.  Let's start with the

6    rule in the Second Circuit has long been.

7            And I'm going to suggest, Mr. Levy, maybe you

8    can move close tore your microphone because we are

9    losing parts of your argument.

10           MR. LEVY:  Thank you, Your Honor.  Is this

11   better?

12           THE COURT:  It is so far.

13           MR. LEVY:  Thank you for that.

14           So I was saying that the rule in the Second

15   Circuit and the Supreme Court has long been

16   established that a cross-appeal is required to

17   enlarge the rights of an appellee by either enlarging

18   the amount of damages or the scope of equitable

19   relief.  That's reflected in the *International Ore*

20   case.  In *International Ore*, the Second Circuit spoke

21   of this as a matter of its power.  This was, of

22   course, pre-2000.

23           In 2000 -- early 2000s, the Supreme Court had

24   cases reexamining its jurisdictional and

25   claim-processing rule.  Most notably, the case of

1    *Bowles*, 551 U.S. 205, held that the requirement to

2    file a notice of appeal in a civil case within 30

3    days is jurisdictional.

4         *Greenlaw*, of course, came the following year.

5    In that case, the defendant was a criminal defendant.

6    He had filed an appeal, and the DOJ had not

7    cross-appealed.  The Court of Appeals nonetheless

8    increased the sentence of the defendants and they

9    went up to the Supreme Court.  The Supreme Court --

10   in the Supreme Court, rather, the defendant and the

11   Department of Justice took the position that the

12   cross-appeal rule is jurisdictional and mandatory.

13   The Supreme Court appointed amicus in the judgment

14   below, and ultimately the court ruled that it did not

15   need to determine the role of jurisdictional or not

16   because it's mandatory, and since the rule had been

17   recognized for scores and scores of years, the

18   Supreme Court had never found an exception to it.

19        Since these decisions *Bowles* and *Greenlaw*, we

20   have of course the *Swatch* case which is a Second

21   Circuit decision from 2014 and which looks at the

22   ruling set forth in *Bowles* and the other Supreme

23   Court cases and holds that it is a jurisdictional

24   requirement.  There are, of course, three *Bowles*

25   cases in the Second Circuit that speak of the

1  cross-appeal requirement as being one of practice.

2  But the exceptions that are recognized in the Second

3  Circuit are extremely narrow, and they're described

4  in the *International Ore* case that I mentioned

5  earlier.  That's 38 F.3d 1279.  And there the Second

6  Circuit explained that the decisions of the Second

7  Circuit that have found exception to the cross-appeal

8  requirements have usually involved where there is

9  more than one defendant and one of them appeals and

10  the other one does not appeal, or more than one

11  plaintiff appeals and the other one does not appeal.

12  That's described at 38 F.3d 1286.  And it's true of

13  the *Barnett* case that the SEC cites.  It's true also

14  of the *Finkelstein* case that the SEC cites.

15        The SEC also cites the *Rangolan* case, 370

16  F.3d 239, but that case actually goes against the SEC

17  decision.  There the Second Circuit declined to give

18  the appellee relief because there was no

19  cross-appeal.

20        In the *Lin* case that the SEC cites, there was

21  a cross-appeal.  And in the cross-appeal that Second

22  Circuit described as cited by the SEC, the Second

23  Circuit reversed its summary judgement -- sorry.  The

24  SEC -- the Second Circuit reversed the district court

25  dismissal that there had been subject matter

1    jurisdiction, reinstated the judgment and reinstated

2    the cross-claim which had been dismissed based on the

3    erroneous ruling in the district court ruling on the

4    subject matter jurisdiction.

5           So the appeal and the cross-appeal were, in a

6    way, intertwined.  There's nothing like that here.

7           The other point, and I think it goes to this

8    idea of did the SEC have to file a protective

9    cross-appeal.  Once there is a cross-appeal, and the

10   notice of cross-appeal can simply say that the SEC is

11   challenging the Court's disgorgement order, that

12   brings up the judgment on the prospect of the SEC,

13   and then the Court of Appeals is at liberty to

14   enlarge the damages for equitable relief.

15          THE COURT:  But the SEC wasn't challenging

16   the disgorgement order, and that's why I asked you

17   why the exclusion of $2 million from that

18   disgorgement order has anything to do with the

19   analysis here.  If the SEC decided to forego that

20   issue, what their -- what wasn't present at the time

21   the appeals were filed is the new statute.

22          So I don't understand what -- whether you are

23   exalting form over substance as to the existence of a

24   cross-appeal that would have altered the disgorgement

25   remedy when in fact the basis for altering the

1    disgorgement remedy is the congressional enactment

2    which gets us back to the language of it applies a

3    pending case.

4              MR. LEVY:  Thank you, Your Honor.

5              Jurisdiction, of course, is a requirement.

6    It's in a sense formal.  Filing a notice of appeal

7    within 30 days is in a sense formal.  It's a

8    requirement for the purposes of the Court of Appeals

9    having jurisdiction.

10             So the point I was making about dissecting

11   the SEC being paid by the $2 million disgorgement

12   judgment was that it could have filed a cross-motion.

13   Had it done so, then there would be no question --

14   there would be less of a question in my mind as to

15   whether to continue it pending for purposes of the

16   statute.

17             But because there is no cross-appeal, because

18   Congress is presumed to enact statutes against the

19   background of jurisdictional and common law rules,

20   because the Second Circuit has required a clear

21   statement to enlarge jurisdiction, for those reasons,

22   the word "pending" should not be read to include the

23   case that is on appeal by the -- not by -- where the

24   SEC has not filed a cross-appeal.  Again, the SEC has

25   said in *Plaut,* in *Plaut,* that Congress had passed a

1    statute that expressly said the new statute of

2    limitation would apply if cases had been dismissed.

3    So Congress knows how to speak clearly --

4         THE COURT:  But that's not what the statute

5    says here that we're dealing with.  It says the cases

6    that were still pending.  And as I understand it, the

7    appeals of this Court's judgment are still pending in

8    the Second Circuit.  So is your whole anchor to why

9    this is not a pending case for the purposes of

10   applying the new statute that there was no

11   cross-appeal?

12        MR. LEVY:  Well, we -- it is one of our

13   arguments.  The other argument that we make is that

14   we -- the circuit and other courts have drawn a

15   distinction between statutes that revive and statutes

16   that enlarge statutes of limitation.  And that does

17   go to, I suppose, the interpretation of what the word

18   "pending" means.  I'm not sure whether your Honor is

19   getting to that, but that is certainly an argument

20   that --

21        THE COURT:  Well, I'd like to know what you

22   do with the distinction in *Plaut* between, quote,

23   judgments from which all appeals have been foregone

24   or completed and judgments that remain on appeal or

25   are subject to being appealed.  How is it that you

```
1    think this case to which the Second Circuit has
2    directed this Court to apply the -- determine the
3    disgorgement obligation under the NDAA, how is it
4    that you arrive at this is a judgment remanded to the
5    district court from which all appeals have been
6    foregone or completed?
7             MR. LEVY:  So a couple points.
8             First, I don't think the Second Circuit has
9    determined the issue of whether this is a pending
10   case or not and whether the cross-appeal alters the
11   analysis.  I know that the SEC argues that in its
12   brief.  But in the Second Circuit, the SEC sought a
13   remand.  We objected to the remand on the basis of,
14   among other things, that there was a failure to
15   cross-appeal, and the SEC said that it wished -- and
16   this is in its reply brief which I belive is cited in
17   the brief before this Court, the SEC said that the
18   appellants raised novel, statutory and constitutional
19   arguments whose full rebuttal would require more than
20   the seven days in 2006 when it was submitted for
21   reply, and then it goes on.  And then it says the
22   appropriate course of action here is to remand now so
23   that this court, likely the Second Circuit, could
24   better adjudicate them later with the benefit of the
25   district court's informed evaluation.  So -- and
```

1    then, of course, the Court's order on there that said

2    that the limited motion was rejected for the

3    determination of the obligation consistent with the

4    statute and, if appropriate, entry of amended

5    judgment.

6          So I think the first point is the Second

7    Circuit did not predetermine what we do for this

8    Court.

9          The second point with --

10          THE COURT:  I'm sure that that's what the

11    Second Circuit meant following the district court's

12    new determination either party may appeal in the

13    normal course.

14          But what I don't understand is what do you

15    think is before the Second Circuit if it's not a

16    pending case?

17          MR. LEVY:  Our appeal is pending.  But the

18    SEC's -- the judgment as far as the SEC is concerned,

19    the appeals involved have foregone.  The 60-day limit

20    that it had on appeal or the 14-day cross-appeal

21    requirement that applied to it passed.  And so as a

22    result, its appeals have been foregone.  And that has

23    been within what *Plaut* meant.  So the judgment is

24    final as to the SEC with respect to the amount of

25    damages that it obtained, and it's the same point as

1  was made by the Supreme Court in *Greenlaw* where,

2  again, the Supreme Court said that it was error to

3  enlarge the sentence on appeal.  And the Supreme

4  Court said once the DOJ decided not to file a

5  cross-appeal, the defendant is ensured that this

6  sentence cannot go up and that it's final for

7  purposes of that sentence.  The court made that

8  expressly clear.

9         THE COURT:  All right.  I understand your

10  argument.  What I don't understand is whether or not

11  you think that *Finkelstein v. Seidel* from the Second

12  Circuit in 1988 that says specifically, however, it

13  has been held that the requirement of a cross-appeal

14  is a rule of practice which is not jurisdictional and

15  in appropriate circumstances may be disregarded, is

16  that no longer good law?

17         MR. LEVY:  So it's one of the cases I

18  mentioned earlier, Your Honor.  Our view is that it

19  is no longer good law following *Greenlaw* and the

20  other Supreme Court cases as explained by the Second

21  Circuit in *Swatch*.  That's number one.

22         Number two, that case does not stand for the

23  proposition that a -- that the amount of damages --

24  for relief can be enlarged.  It's one of the cases in

25  which there were several parties on one side, one of

1     whom cross-appealed and the other who did not, and

2     that's not the situation we have here.  It's

3     described in *International Ore* at page 1286 of the

4     Federal Reporter where the Second Circuit said, and I

5     quote, generally, however, these cases have involved

6     multiple parties where only one of several plaintiffs

7     or defendants failed to cross-appeal.  In each case,

8     the court included the noncross-appellants in the

9     amended judgment so as to preserve fairness.

10            That's not the situation we have here, and we

11     are not aware of a Second Circuit or Supreme Court

12     case finding an exception to the cross-appeal rule

13     which, again, as considered mandatory by the Supreme

14     Court and jurisdictional -- the Second Circuit in the

15     context where the non -- an appellee who has not

16     cross-appealed is seeking to enlarge a judgment.

17            THE COURT:  All right.  One last question

18     before I -- well, let me ask Mr. Knag if he has

19     anything to add on behalf of the relief defendants.

20            MR. KNAG:  All right.

21            THE COURT:  Mr. Knag.

22            MR. KNAG:  Your Honor, I think that Mr. Levy

23     has well summarized our position.  But I would just

24     add, if there had been a complete withdrawal of the

25     appeal by the appellants, there would have been

A-202

22

1   nothing for the SEC to seek here in terms of higher

2   judgment.  And that just illustrates the fact that

3   this cross-appeal rule is intended to say that if you

4   don't take a cross-appeal, you can't increase the

5   judgment.

6           So I basically rest on the arguments made by

7   Mr. Levy.

8           THE COURT:  Mr. Knag, do you agree that if

9   the issue of whether this case is pending is

10  determined adversely to the relief defendants and the

11  defendants, that the ex post facto argument falls

12  away?

13          MR. KNAG:  No.

14          THE COURT:  All right.  We'll get to that in

15  a moment.

16          MR. KNAG:  Mr. Levy will address that.

17          THE COURT:  All right.  I'm going to go back

18  to Mr. Yoder for any follow-up analysis on what is

19  the existing state of case law in the Second Circuit

20  with respect to whether a cross-appeal is

21  jurisdictional, whether it's a rule of practice,

22  whether exceptional circumstances should be examined.

23          MR. YODER:  Thank you, Your Honor, for the

24  opportunity to speak.

25          The commission's position is that the Second

```
 1    Circuit has not definitively ruled that the
 2    cross-appeal rule is a jurisdictional rule.  Cases
 3    like Finkelstein state to the contrary, that it's not
 4    a jurisdictional rule.  It's not clear that the
 5    Second Circuit has squarely been presented with that
 6    question and decided it in previous cases.
 7            I would note that this -- in this case, we're
 8    not seeking to amend the judgment because this Court
 9    cares.  We're seeking an increase in disgorgement
10    because Congress changed the law while appeal was
11    pending.
12            And all the cases cited by Mr. Ahmed from the
13    Second Circuit and other ones, including the Greenlaw
14    case, involve challenges to the judgment as rendered
15    by the lower court.  They do not involve cases --
16    they generally do not involve cases where Congress
17    changed the law.
18            There is the one case, the Litton case, where
19    Congress did change the law but a cross-appeal had
20    been filed.  But even there the Second Circuit did
21    not reach the issue.  It didn't need to because a
22    cross-appeal had been filed.
23            But I would go on and note that -- pardon me.
24    We're not aware of any case law stating that a party
25    must file protective cross-appeal in case Congress
```

1    changes the law while the appeal was pending.

2           And the Ninth Circuit has recognized an

3    exception to the cross-appeal rule in the *Zerby* case,

4    that's *Zerby v. City of Long Beach* from 2016, which

5    we cite in our brief, for this circumstance where

6    Congress changes the law while the appeal is pending.

7           And, finally, I would note that implicitly

8    the Second Circuit did reach this question, with due

9    with respect to my opposing counsel.  The remand

10   would have been an exercise in futility if the

11   Second Circuit -- at least per the Second Circuit's

12   wording of the order, it would make no sense to

13   remand for a determination of disgorgement under the

14   NDAA if the Second Circuit thought that the

15   cross-appeal rule had merit to it.  That would be an

16   exercise of futility.  And it's already been noted,

17   Mr. Ahmed and the relief defendants did raise this

18   argument to the Second Circuit.  It was fully briefed

19   as an argument against remanding.  And so a remand

20   for the express purpose of our time, the NDAA

21   implicitly rejected that argument.

22           THE COURT:  With respect to the existence of

23   an argument as to the ex post facto impact of the

24   enactment of the NDAA during the pendency of this

25   appeal, what is your view with respect to whether or

A-205

1    not the existence of a pending case extinguishes that

2    argument or does not?

3         MR. YODER:  Our view is that it extinguishes

4    much of Mr. Ahmed's argument, but it does not

5    extinguish all of his argument.

6         And if Your Honor will permit me to explain,

7    Mr. Ahmed cites a number of cases addressing statutes

8    that revived a cause of action for which the statute

9    of limitations had already run.  In those cases there

10   was no action pending.  And the fact that this action

11   was pending on appeal when Congress enacted the NDAA,

12   therefore extinguishes all of those cases cited by

13   Mr. Ahmed.

14        On the other hand, as I understand

15   Mr. Ahmed's argument, he argues that application of

16   the NDAA in this case would essentially penalize him

17   after the fact in violation of the ex post facto

18   clauses of the Constitution.  My understanding is

19   that the pending nature of this case does not resolve

20   that aspect of Mr. Ahmed's argument.

21        As the commission sets forth in our brief,

22   our position is that the remedy in question here is

23   equitable as construed in *Liu*.  And as long as this

24   Court applies the *Liu* principles, the equitable

25   principles to the increased disgorgement award under

A-206

1    the NDAA, then the increased remedy is not penal in

2    nature and, therefore, Mr. Ahmed's ex post facto

3    argument fails.

4           THE COURT:  All right.  Mr. Levy.

5           MR. LEVY:  Thank you, Your Honor.

6           I think if I could respond to Mr. Yoder's

7    point about whether this is an open question in the

8    Second Circuit or not at this point.

9           THE COURT:  Keep close to your microphone

10   because you're fading in and out, please.

11          MR. LEVY:  Thank you, Your Honor.

12          I think the *Swatch* case that I referred to

13   earlier is - really is very clear.  The *Swatch* case

14   at page 93 in the Reporter says that the extent in

15   Bloomberg, which was there for the appellee,

16   challenges the district court's dismissal of its

17   counterclaim, including declaration that *Swatch's*

18   copyright is invalid, that ruling in the district

19   court is not properly before us.

20          The court goes on to say that Federal Rule of

21   Appellate Procedure 3 which provides that a notice of

22   appeal must designate the judgment order or part

23   thereof being appealed is jurisdictional, citing a

24   2012 Supreme Court decision, and then it goes on to

25   say that we could reasonably read Bloomberg's notice

1     of cross-appeal to contemplate review of an order

2     that did not issue until nearly two months

3     afterwards, but the cross-appeal did not apply.

4     There's no jurisdiction to review the dismissal of

5     the cross-claim in the absence of a proper

6     cross-appeal.  Those are the words of the Second

7     Circuit.  And the circuit cites the *International Ore*

8     case that I referenced earlier, which again speaks of

9     the authority to enlarge damages for the scope of

10    equitable relief as going to the power of heart.

11          And then the disposition says Bloomberg's

12    cross-appeal filing is dismissed for lack of standing

13    and lack of jurisdiction, and that's the Second

14    Circuit.

15          Mr. Yoder cited a Ninth Circuit case from

16    2016 which is an unpublished, non-precedential

17    decision, obviously not binding on the Court as the

18    Second Circuit said in *Swatch*, and it simply recited

19    Ninth Circuit cases from before *Bowles* and the *Bowles*

20    line of cases in the Supreme Court.

21          THE COURT:  Does it matter that *Swatch* is a

22    civil case, not a criminal case, so that the issue of

23    punitive nature does not come into play?

24          MR. LEVY:  Well, this is a civil case as

25    well, Your Honor, so I don't think it matters.  I

1    don't know whether Your Honor was asking about the ex

2    post facto issue.

3           But with respect to whether --

4           THE COURT:  I am.  I am.  If ex post facto is

5    analyzed in terms of the punitive nature of the

6    remedy, then I don't -- I'd like your understanding

7    as to why *Swatch* applies this analysis.

8           MR. LEVY:  Well, I think it's common ground,

9    Your Honor, between the defendants and the SEC that

10   the cross-appeal -- the lack of a cross-appeal on

11   that issue does not have a bearing on the ex post

12   facto claim that we raise.  The ex post facto claim

13   that we raise is that before enactment of the NDAA,

14   it was clear under *Kokesh* that the court could not

15   order disgorgement for any conduct that occurred

16   before 2010.  This is what the court held in its

17   prior rulings.  The SEC is now seeking to enlarge the

18   damages award and to provide for disgorgement based

19   on conduct that happened before 2010.  That sort of

20   enlargement is -- if it's -- if the intent of the

21   enlargement is punitive, is there a violation of the

22   ex post facto clause under clear Supreme Court case

23   law.  And I think that is common ground in the SEC.

24          I think the point where the parties diverge

25   is whether this is punitive or not.  Our view is that

1  it is punitive, number one, because *Kokesh* said that

2  for purposes of evaluating the statute of limitations

3  in the Exchange Act, the court considered that the

4  intent of the Congress was to punish the wrongdoer.

5  And given it is punitive, I will also note that in

6  the NDAA itself, Congress drew a distinction applying

7  a five-year statute of limitations for securities

8  violations and a longer ten-year statute of

9  limitations for those that are committed with

10  scienter, with a bad intent, which again signals a

11  punitive intent on the part of Congress.

12        So in our view, those are the reasons why

13  this is punitive and, of course, can therefore

14  trigger the ex post facto clause.  But there's an

15  order tying cases that is related to this, and that's

16  reflected in the *Louis Vuitton* case that I believe is

17  cited in the brief, but it's 765 F.2d 966, a 1985

18  decision from the Second Circuit.  And there the

19  issue is whether the plaintiff could seek treble

20  damages from a new statute in a civil case that

21  applied treble damages.  And the Second Circuit said

22  because the application of treble damages is arguably

23  punitive in a civil case, we're going to decline to

24  apply this statute retroactively in order to avoid an

25  ex post facto issue in recognition of the canon of

1   constitutional avoidance.

2          So in a nutshell, this is our ex post facto

3   argument, that they're here to enlarge the statute,

4   enlarge the limitation period through the acceptance

5   applied retroactively punitive and should not be

6   applied retroactively on any ex post facto clause as

7   a matter of Constitution and as a matter of statute

8   in light of the canon of the constitutional

9   ordinance.

10         THE COURT:  All right.  Mr. Knag, anything to

11   add to the argument on behalf of relief defendants?

12         MR. KNAG:  Okay.  Sorry.  I was waiting to be

13   able to unmute.

14         No, Your Honor.

15         THE COURT:  Okay.  And, Mr. Yoder, your

16   response, if any, on behalf of the SEC, particularly

17   recognizing that when the SEC initially brought the

18   case, *Kokesh* was not in play.  In fact, we stayed

19   summary judgement ruling to see whether -- what would

20   be the outcome in *Kokesh*.

21         What is your response to Mr. Levy's argument

22   that this is punitive -- retroactive application of

23   the NDAA would be punitive and would violate the

24   constitutional prohibition on ex post facto

25   legislation?

1          MR. YODER:  Thank you, Your Honor.

2          The commission's position is that *Kokesh*

3     cannot reasonably be read as existing in a vacuum and

4     that that's essentially how Mr. Ahmed is reading it.

5     The commission believes that it's necessary to read

6     *Kokesh* in the context of the more recent *Liu* decision

7     which expressly distinguished *Kokesh*.  And as we --

8     as the commission states in its brief, the *Liu* court

9     stated that the *Kokesh* court had addressed a version

10    of the commission's disgorgement remedy that seemed

11    to exceed the balance of traditional equitable

12    principles and held that that accepted disgorgement

13    imposed a penalty.  And, therefore, the *Liu* court

14    continues, *Kokesh* has no bearing on the SEC's ability

15    to conform future disgorgement requests to equitable

16    principles.

17         And the court even said at pincite 140

18    Supreme Court 1946, that disgorgement as defined by

19    the court is not a punitive sanction.

20         This is all in our brief, Your Honor.

21         Basically, the *Liu* court clarified that

22    disgorgement that conforms to traditional equitable

23    principles is not a penalty and is not punitive.  And

24    in that case -- in that case, the remedy that the

25    commission is seeking here is not punitive and not

1   penal in nature because, as our brief explains, our

2   request for increased disgorgement under the NDAA is

3   entirely consistent with the equitable principles

4   that *Liu* articulated.

5           Moreover, it's -- I think all the parties

6   here have understood that this area of the law has

7   been in flux over a number of years.

8           As Your Honor noted, Your Honor stayed this

9   litigation pending the *Kokesh* decision.  And when

10  Mr. Ahmed and the relief defendants' appealed, they

11  asked the Second Circuit to stay the appeals pending

12  the *Liu* decision.  The commission did not object to

13  that because our goal is to get at the right

14  solution.  And so this case was held on appeal for --

15  for the better of a year pending *Liu*.

16          Now we have the benefit of *Liu,* and our --

17  the commission's view is that *Liu* provides the

18  authoritative laws on what *Kokesh* meant in describing

19  that particular disgorgement award in that case as a

20  penalty.  And, in essence, *Liu* narrowed *Kokesh* more

21  or less to its facts, to the facts of the case.  And

22  because the commission is seeking to follow *Liu* here,

23  we believe that there is no -- there is nothing

24  punitive about what the commission is seeking and,

25  therefore, citing the common ground that Mr. Levy

1　pointed out, the ex post facto clause does not bar

2　what the commission is seeking here.

3　　　　　And then, finally, I'd like to address one

4　further point that Mr. Levy made.  He noted that the

5　NDAA increased the statute of limitations for cases

6　involving scienter and that this necessarily reflects

7　a punitive intent.  The truth is that we don't know

8　exactly what Congress's intent was in drawing that

9　division between a five-year and ten-year statute of

10　limitations.  Congress could rationally have thought

11　that cases of fraud are necessarily harder to

12　discover, that they might go undetected for longer

13　periods of time and it might take the commission a

14　longer time to bring an enforcement action to remedy.

15　It didn't necessarily bear on punishing defendants.

16　It could simply have to do with how fraud has

17　happened in practice.

18　　　　　So I just wanted to dispel any notion that

19　some unstated intent of Congress should govern here.

20　There are plenty neutral explanations for what

21　Congress did in its statute.

22　　　　　THE COURT:  With respect to the existence of

23　scienter as impacting which statute of limitations is

24　applicable, is that -- is that not on appeal; that

25　is, whether there was sufficient evidence to

34

```
 1  demonstrate scienter as the Court found?
 2             MR. YODER:  I will let Mr. Ahmed speak to
 3  that argument.  My understanding is that they did
 4  not -- is that his appeal did not challenge the
 5  sufficiency of evidence of scienter on appeal.  My
 6  understanding is that his appeal focused more on
 7  procedural aspects such as the lack of access to
 8  funds to retain counsel before this Court.
 9             THE COURT:  All right.  Mr. Levy, has the SEC
10  accurately characterized what your appeal is in fact
11  focused on?
12             MR. LEVY:  I guess a couple of points.
13             In terms of what our appeal is focussed on,
14  we have not -- we have challenged the entry of
15  summary judgement as a wholesale matter.  We have not
16  challenged the sufficiency of the evidence for the
17  pre-2010 scienter allegations because the brief was
18  filed, we admitted before the NDAA.  I was writing it
19  as the NDAA -- but that issue wasn't really real.  We
20  will have to reconsider on appeal whether this is an
21  issue or not.
22             I think for purposes of this proceeding, it
23  is true that the Court held that he acted with
24  scienter, and I was raising the point that Congress
25  had two different statutes of limitations as evidence
```

1    that the enlargement after five years set froth in

2    *Kokesh*, the ten years for scienter claims was

3    punitive.

4           If I may, I'd also like to brief you on the

5    interplay between *Kokesh* and *Liu* in response to

6    Mr. Yoder.

7           The -- *Kokesh* itself holds expressly, and

8    this is at page 1642 of the Supreme Court Reporter,

9    that SEC disgorgement operates as a penalty.  That's

10   a quote.  The court says that whether the distinction

11   represents a penalty turns on whether the wrong

12   sought to be redressed is a wrong to the public or a

13   wrong to the individual.  And it also looks to

14   whether the sanction is being sought for purposes of

15   punishment or to deter others as opposed to

16   compensating a victim for the loss.  And that's at

17   page 1622 that sets the standard.

18          And then at page 1633 to 34 of the Reporter,

19   the Supreme Court makes extremely clear that

20   disgorgement sanctions sought by the SEC are sought

21   for the public good and the public welfare, citing

22   cases from multiple circuits, including notably the

23   Second Circuit, holding that the primary purpose as a

24   remedy for violation of the securities laws is to

25   deprive violators of their ill-gotten gains, thereby

1    effectuating the deterrence objectives of those laws.

2    That's a quote -- quotation from First Jersey, the

3    Second Circuit decision from 1996 which were cited in

4    *Kokesh*.

5         And then *Kokesh* goes on to say that sanctions

6    imposed for the purpose of deterring infractions of

7    public laws are inherently punitive.  Deterrence is

8    not a legitimate nonpunitive governmental objective.

9    And it cites other cases in this context.  That's

10   what *Kokesh* held.

11        *Liu*, which, of course, comes later, only goes

12   to address a separate question which is assuming

13   disgorgement is being sought and disgorgement at the

14   time of *Liu* was to be measured by whether it was

15   equitable or not, because at the time the SEC was

16   relying on the provision that allowed --

17        THE COURT:  Keep leaning towards your

18   microphone.  I'm losing words.

19        MR. LEVY:  I apologize.

20        THE COURT:  Okay.  You said that *Liu*

21   addresses the separate question which assumes

22   disgorgement is sought and disgorgement was or was

23   not measured at the time as equitable or not.

24        MR. LEVY:  Right.  So in *Liu*, at the time the

25   statute provided that the SEC could seek equitable

1    relief.  And the question was whether disgorgement

2    counted as equitable relief.  So it did not address

3    the question of whether disgorgement was punitive in

4    nature or not.  That question was addressed in

5    *Kokesh,* and the Supreme Court in *Kokesh* held that it

6    is punitive.

7         The question in *Liu* is given that

8    disgorgement has to be equitable, can it be entered

9    by a district court pursuant to the SEC's authority

10   to seek equitable relief.  And that was the question.

11   So it's a separate question.  I don't think *Liu* gets

12   at the question of whether it's punitive or not.

13   And, of course, I think ultimately the Court does not

14   have to -- first of all, I think the question of

15   whether it's punitive is resolved by *Kokesh.*  But the

16   Court does not have to go that far because the

17   statute is sufficiently ambiguous, as I think we get

18   at in terms of distinguishing between reviving

19   time-barred claims and imparting statutes of

20   limitations, that the Court can avoid this

21   constitutional question and rule that the statute

22   does not revive time-barred claim and thereby avoid

23   the ex post facto issue, just as -- in the same way

24   as the Second Circuit caution should be done in the

25   *Louis Vuitton* case which, as I said, involved treble

1    damages.

2              I'm, of course, happy to address the issue of

3    the distinction between reviving time-barred claims

4    and enlarging statutes of limitations if the Court

5    would like, unless the Court would prefer to hear

6    from Mr. Yoder on ex post facto claims.

7              THE COURT:  I would like to hear from

8    Mr. Yoder in response.  But the distinction between

9    reviving time-barred claims relates back to your

10   argument about the absence of a cross-appeal, right?

11             MR. LEVY:  No, it does not, Your Honor.  Even

12   putting that aside, that distinction remains, and

13   it's an important distinction because it's something

14   that the circuit and the Supreme Court have required

15   in terms of applying a canon against retroactivity.

16   And so that argument does not rest at all -- it does

17   not rely on the absence of the cross-appeal.

18             So if the Court would like, I can try to

19   explain the argument, unless the Court would prefer

20   to hear from Mr. Yoder first.

21             THE COURT:  No.  Let's have your summary of

22   your position in that regard because that is

23   something entirely separate, as you put it, from your

24   argument that there is no cross-appeal, thus it's a

25   final judgment, thus there's inapplicability of the

1   NDAA to this case.

2           MR. LEVY:  Okay.  Thank you, Your Honor.

3           So the starting point for this analysis is

4   the canon against retroactivity, which as articulated

5   by the Second Circuit in *Enterprise Mortgage* and the

6   Supreme Court in the landmark *Landgraf* case holds

7   that to have a retroactive application, Congress has

8   to use language that is so clear it could sustain

9   only one interpretation.  That's from *Enterprise*

10  *Mortgage* at page 405 of the Federal Reporter.

11          Cases from other circuits and from the

12  Supreme Court are in accord.  In other words,

13  Congress has to clearly state an intent to apply this

14  statute retroactively.

15          Now, the important point here --

16          THE COURT:  So if that's your argument then,

17  and that canon applies that Congress has to state

18  clearly its intent, why do -- where is it in the

19  statute that there is ambiguity where it says

20  applicability, that the amendments that are at issue

21  here shall apply with respect to any action or

22  proceeding that is pending, et cetera?  But you say

23  that it does not relate -- this analysis does not

24  relate to whether this is a pending action.

25          MR. LEVY:  I think the language that your

1   Honor pointed to does not speak clearly to whether

2   Congress intended to revive the statute of

3   limitations or not.

4        And if I could discuss the facts of

5   *Enterprise Mortgage* a bit, which is a Second Circuit

6   decision, there Congress had extended the limitation

7   period for certain securities claims.  Congress said,

8   in quotes, that the limitation periods shall apply to

9   all proceedings commenced on or after the date of

10  enactment.  That's at page 406 of the Reporter.  The

11  plaintiff there had brought a case after the date of

12  the enactment and sought to apply the new and longer

13  statute of limitations.  The court said that even

14  though the case was brought after the date of the

15  enactment and, therefore, fell within the plain

16  language of the statute, the statute would

17  nonetheless not be read to revive a time-barred

18  claim.  And the court even said that the statute was

19  most naturally read as applying to any proceeding

20  that is commenced after enactment.  That's at page

21  406 to 407 of the Reporter.  The court nonetheless

22  declined to revive a time-barred claim.

23       The court distinguished between two different

24  things.  It distinguished between a situation where

25  the plaintiff still has time on the statute of

1    limitations and the limit extended by some years --

2    that's the permissible enlargement -- and a situation

3    where a plaintiff has a -- I'm sorry, a defendant, I

4    apologize, has a vested statute of limitations

5    defense. And that's an improper revival. And the

6    court said that to have that second sort of

7    retroactivity, that Congress needs to state clearly.

8         So, for example, the SEC had two years left

9    on a claim against Mr. Ahmed, and it was now seeking

10   to have application of ten years, which is five

11   years, and to enlarge the limitation period from

12   seven years to two years, that would be a permissible

13   enlargement. But saying that it can now go back and

14   revive a claim that is barred and divest the

15   defendant from a statute of limitations defense, that

16   requires clear language, as the Second Circuit held

17   in the *Enterprise Mortgage* case.

18        Now, the circuit noted that the word

19   "pending" could sometimes imply, of course, on

20   retroactive application. It also noted at page 407

21   of the Reporter instances where Congress had clearly

22   used language to indicate an intent to revive

23   time-barred claim. It's at 407 of the Reporter. The

24   circuit cited the Riegle-Neal Interstate Banking and

25   Branching Efficiency Act which cited the Higher

1    Education of Technical Amendments of 1991, both of

2    which clearly stated an intent to revive time-barred

3    claims.

4            The other case which -- another case which I

5    think illustrates the point and --

6            THE COURT:  Let me just stop you one moment.

7            Do you contend that this action when brought

8    by the SEC was time-barred?

9            MR. LEVY:  We contend that when the SEC

10   brought this action, it could not seek damages

11   outside the five-year limitation period.  *Kokesh* made

12   that expressly clear.  And the fact that *Kokesh* had

13   not been decided at the time that the SEC brought the

14   action does not change that analysis.  The statute of

15   limitations -- there's a difference between

16   retroactive application of judicial decisions

17   interpreting statutes which have long been recognized

18   as improper and retroactive application of statutes

19   which are subject to this canon against

20   retroactivity.

21           And so we do contend, and I think it's

22   established by the Supreme Court, that the

23   disgorgement being sought beyond the five years from

24   before the action were time-barred and there was a

25   statute of limitations defense, as I think the Court

1    recognized, post-*Kokesh* as summary judgement.

2         And Mr. Ahmed did have a vested statute of

3    limitations defense; and the SEC is now seeking to

4    apply a new statute, the NDAA, to divest Mr. Ahmed of

5    that defense.  So it squarely falls within the scope

6    of those cases.

7         If I could cite -- discuss briefly the *Kansas*

8    *Public Employees* case which is an Eighth Circuit

9    case, it was applying Kansas law, but it gets to the

10   same point.  The statute there said that the

11   limitations set forth in this new provision are to be

12   construed and applied retroactively.  It said that

13   expressly.  And the Eighth Circuit said while that

14   would be enough to enlarge a statute of limitations

15   but it's not clear enough to revive a time-barred

16   claim, time-barred actions.  That's 61 F.3d 608.

17        And so -- and it's the same point as the

18   Second Circuit made in the *Enterprise Mortgage* case

19   which is that to require -- to read a congressional

20   statute as divesting a defendant of a statute of

21   limitations defense requires clear words admitting of

22   only one construction, and that is not what we have

23   here.

24        I think as a related matter, the fact that

25   the SEC is now seeking to go back more than ten years

1    before enactment of the NDAA is yet another reason to

2    read the statute as applying the way the SEC urges

3    because the statute of limitations, which was enacted

4    in 2021, would be read to have application more than

5    ten years before the statute of limitations went into

6    effect.

7         It's a situation that is somewhat analogous

8    to the Second Circuit decision that's cited in the

9    briefs, that's the *Middleton v. City of Chicago* case

10   where a -- the statute there was a statute of

11   limitations for four years.  Congress passed a new

12   statute saying that there would no longer be any

13   statute of limitation covering these claims, and the

14   Seventh Circuit said that it did not need to decide

15   whether that statute would have retroactive

16   application to claims that accrued within the

17   four-year period proceeding the enactment but it

18   would not read the statute as reviving and extending

19   and giving defendants -- sorry, giving plaintiffs the

20   benefit of the defense that had -- sorry, and by

21   vesting defendants' defense on statute of limitations

22   grounds.

23         THE COURT:  So you claim that when the SEC

24   brought this case, at that time it was limited to

25   five years of damages, five years, and that its

A-225

1   effort now to use the NDAA to go back more than five

2   years, based on the language of the statute that it

3   was ten years, tells -- advises as to why their

4   intention or their purpose is to revive a time-barred

5   claim.  Do I have that right?

6         MR. LEVY:  Well, I think that is right.  I

7   think in the simplest sense, as the Court recognized

8   at, I believe, the disgorgement order, claims for

9   damages going more than five years back were

10   time-barred and there was a statute of limitations

11   defense.  That was --

12         THE COURT:  Okay.  But that -- I'm going

13   to -- that was based on *Kokesh*.  Are you saying that

14   *Kokesh* made new law or that *Kokesh* was a

15   clarification of existing law that would mean that at

16   the time the SEC filed its act -- enforcement action,

17   it was limited to five years of damages?

18         MR. LEVY:  I'm not sure our argument turns on

19   that distinction.  But our view is that the Supreme

20   Court in *Kokesh* was interpreting an existing statute,

21   and so that was -- judicial decisions, of course,

22   have retroactive application in some sense and was in

23   a sense clarifying what the law was in 2010, although

24   some months later -- I'm sorry, in 2015 when the

25   action was filed, although *Kokesh* was decided later.

```
 1            But the point, regardless of what the statute

 2     of limitations was at the time the SEC filed the

 3     action was that at the time of the judgment, there

 4     was a statute of limitations defense that was a

 5     five-year statute of limitations.  And the NDAA is

 6     now being sought and asserted to enlarge that statute

 7     of limitations and to divest Mr. Ahmed of a defense

 8     that was vested that he had that was recognized by

 9     both a statute and a judgment of this court.  And

10     that raises statutory problems, it raises

11     constitutional problems, and that is our position.

12            THE COURT:  What is your view then of the

13     authority of Congress to enact a new statute to

14     affect a Supreme Court decision?  Are you saying that

15     it cannot do that?

16            MR. LEVY:  I think Congress has the -- there

17     are a few responses to that.  I think that Congress

18     is subject to certain constitutional restrictions.

19     To the extent it is punitive, Congress cannot come

20     out under the ex post facto clause.  To the extent

21     Congress is overruling a Supreme Court case and seeks

22     to undue judgments of the Court, *Plaut* makes clear

23     that Congress cannot do that consistent with the

24     separation of powers.  So there are certain limits on

25     Congress's authority.
```

```
 1              But putting that aside, there is, of course,

 2      a recognized canon against retroactivity that's

 3      recognized in the cases we cite.  And regardless of

 4      whether Congress has the power or not, as a general

 5      matter, it is not read to deprive and divest

 6      individuals of vested statute of limitations defense

 7      without a clear language -- clear statement.  And I

 8      don't believe that the Supreme Court has clearly

 9      addressed the question of whether that is permissible

10      under the process.  Some of the circuit cases have

11      intimated that in fact it cannot be done

12      retroactively, that is a due process violation, and I

13      think the real reasons courts unrule, read statutes

14      not do that.  And they require a statute that is made

15      of only one interpretation, and that is an

16      interpretation that requires divesting a defendant of

17      a vested statute of limitations defense.  That's what

18      the Enterprise Mortgage case does in plain English.

19              THE COURT:  All right.  Mr. Knag, anything

20      further to add to that argument on behalf of the

21      relief defendants?  Was that the hand signal of no

22      further comment.

23              MR. KNAG:  I have no further comment, but the

24      system wasn't letting me unmute but now I'm unmuted.

25              THE COURT:  Okay.
```

A-228

1     MR. KNAG:  So, yes, I have no further

2  comments.  I agree with Mr. Levy's analysis.

3     THE COURT:  Are there any points, Mr. Knag,

4  at which the relief defendants' arguments and

5  analysis diverge from the defendant's?

6     MR. KNAG:  Well, there are -- I don't think I

7  would use the word "diverge."  But when we get to the

8  issue of discretion, the Court has discretion as to

9  whether to award disgorgement, as to whether to award

10  prejudgment interest.  And I think that those, the

11  exercise of that discretion certainly could be

12  instructed by the fact that the relief defendants

13  would be the ones adversely affected by extending the

14  judgment to a higher level, including the

15  disgorgement -- the additional disgorgement and the

16  prejudgment interest.  I don't think that's a

17  divergence.  It's just an element that specifically

18  relates to the relief defendants.  We haven't gone to

19  the question or the issues yet, but when we get to

20  that, that's where I would be at that point.

21     THE COURT:  Mr. Yoder.

22     MR. YODER:  Thank you, Your Honor.

23     I think that some of the confusion in

24  Mr. Ahmed's argument might revolve around the use of

25  this term "time-barred."  In the cases that Mr. Ahmed

1   cites, the courts describe time-barred -- the courts

2   use the word time-barred to refer to actions that

3   were not brought within the statute of limitations.

4   They do not talk about the expansion of relief within

5   an action that was pending as of the time of the new

6   legislation as this was.

7         In the commission's view, the commission

8   brought this action in 2015 seeking disgorgement of

9   all of Mr. Ahmed's unjust enrichments throughout the

10   entirety of his fraud.

11         We do believe that *Kokesh* was a new

12   development in the law that had not been foreseen.

13   Prior to *Kokesh*, there was no decision from the

14   Second Circuit that applied any statute of limitation

15   to the commission's disgorgement remedy.  So,

16   respectfully, we believe that was a new development

17   in the law.  While the commission's action remained

18   pending, the commission acknowledged that *Kokesh* was

19   then the governing law.  But Congress has now

20   statutorily abrogated *Kokesh* through the NDAA, and

21   the commission's action still remains pending;

22   therefore, the NDAA applies by its terms.

23         And if I could go to Mr. Levy's point about

24   the clarity of Congress's language, Mr. Levy is

25   correct that the courts are generally reluctant to

1 interpret congressional enactments as applying

2 retroactively simply as a matter of statutory

3 discretion. The leading case on that is *Landgraf v.*

4 *USI Film Products* which the commission cites in our

5 brief. And that case does talk about the clarity of

6 language that Congress needs to use in order for

7 courts to grant a statute retroactive application.

8 But the *Landgraf* decision itself said that that

9 language that all proceedings pending on or commenced

10 after the date of enactment would amount to an

11 explicit retroactivity grant. That's at pages 511

12 U.S. 244 at 255 to 256 cited in our brief. Wherein

13 the Supreme Court reiterated the same point just a

14 few months later in *Martins v. Hadix* 1999, also cited

15 in our brief.

16        None of the cases cited by Mr. Ahmed address

17 similar pending language which is what the Supreme

18 Court addressed in *Landgraf* and *Martins* and what

19 Congress used in enacting the NDAA. And Mr. Ahmed is

20 not -- is unclear what language would suffice if this

21 doesn't suffice because he is going beyond what the

22 Supreme Court itself required.

23        Now, *Landgraf* also said -- the Court doesn't

24 need to reach this. But *Landgraf* says if the

25 language is ambiguous, the court then must see

1    whether there would be any impermissible retroactive

2    effect from applying the statute retroactively.  As

3    the commission sets forth in its brief, we belief

4    there is no impermissible retroactive effect here

5    because there is no revival of a cause of action.

6    The statute of limitations had expired.

7          In addition, the assets that are at issue

8    with the Court's disgorgement order were frozen

9    during the entire time between *Kokesh* and the

10    enactment of the NDAA; and, therefore, Mr. Ahmed and

11    the relief defendants could not have any settlement

12    expectation as to assets that remain frozen.  They

13    could not reasonably have interpreted any of this

14    Court's statements as promises that those frozen

15    assets would be released.  Because they had no

16    reasonable expectation and no subtle expectation with

17    respect to the frozen assets, we believe that there

18    is no permissible retroactive effect.  Although, to

19    be clear, we don't believe the Court needs to reach

20    that issue because we believe the language Congress

21    used here was sufficiently clear on its own to

22    warrant retroactive application.

23          THE COURT:  I'd like to, in the interest of

24    time, move to what is, in essence, a bottom-line

25    purpose of the hearing, which is if the Court gets

1    through all of the threshold issues that we've been

2    discussing, what would be the appropriate

3    disgorgement remedy applying a ten-year statute of

4    limitations.  I think the SEC may have miscalculated

5    that by including in its figure a $650,000 amount

6    from company D that exist -- that was obtained prior

7    to the ten-year statute of limitations.  But that's

8    why I'm putting it out there, because that's what it

9    looked like.  If that was inaccurate, then the amount

10    of $63,404,313 appears to be the undisputed maximum

11    amount of what a disgorgement remedy could be amended

12    to be, assuming all of the other arguments fail.  The

13    SEC puts out an interest figure of $9,755,798.34

14    which has not been opposed except to the extent that

15    the defendants claim that the prejudgment interest

16    shouldn't apply at all.

17         So it seems from your briefing that the

18    actual figures are not in dispute but whether or not

19    they can be used at all is.  Is that an accurate

20    statement, Mr. Levy?

21         MR. LEVY:  I think that we -- of course, if

22    the Court gets by the issues we discussed earlier, I

23    think the question for the Court would be whether in

24    its discretion it chooses to order a disgorgement.

25    Of course, we do think that the Court should not

1  order disgorgement of --

2          THE COURT:  No.  I understand all that.  But

3  is this number accurate?

4          MR. LEVY:  I think that in terms of the

5  interest rate, Mr. Knag was going to address it.  I

6  believe that our position on the transactions is that

7  the SEC had a burden to establish that these are net

8  numbers as opposed to gross gains.  I'm not sure they

9  have done that.  To that extent, the numbers are in

10  dispute as a wholesale matter rather than on a retail

11  level.  The interest rate, I will let Mr. Knag speak

12  to.  And then I think there was some briefing as to

13  whether there should be gains as well as interest,

14  which I can address as well if Your Honor would like.

15  That's in dispute.

16          THE COURT:  Now, is this the issue that has

17  remained on appeal already, or is this a new issue?

18          MR. LEVY:  It is the same issue, and so it's

19  only before the Court to the extent that it wishes to

20  procure as further disgorgement.  And we recognize,

21  of course, that the Court has made a ruling as to

22  distinct disgorgement amounts and that the issue is

23  presently -- of interest and gains on those amounts

24  is presently before you.  But that doesn't

25  necessarily lead me back to court with respect to any

54

1    new disgorgement.  But, yes, it is on appeal, Your

2    Honor.

3             THE COURT:  So for the limited purpose of

4    this remand, the focus is on your issues that we've

5    been discussing already, not on the amount; that that

6    would be adjusted as to net or gross, as to interest

7    rates, et cetera, at another time; is that correct?

8             MR. LEVY:  I think to the extent that the

9    interest rates are reserved for another time, then --

10   and the gains issue is also reserved for another

11   time, yes, I think that's correct.  And Mr. Knag may

12   have more on the subject.

13            THE COURT:  All right.  Mr. Knag, anything

14   further?  Because I don't want to get into the issues

15   that you already have on appeal.

16            MR. KNAG:  Right.

17            THE COURT:  I want to simply focus on what

18   the circuit remanded here and let the disposition of

19   the appeal adjust that outcome if it is an increased

20   disgorgement figure.

21            MR. KNAG:  Well, yes.  I do think -- the SEC

22   is asking for interest and prejudgment interest as a

23   part of its request in this remand.  And Your Honor

24   mentioned that we oppose any award and prejudgment

25   interest on any additional disgorgement amount, and

1    that is correct.

2         But in addition, we take the position that

3    the interest rate that was used which was the IRS

4    rate is prohibited under *Liu* and it, therefore, could

5    not be used in this -- in any amended judgment that

6    Your Honor enters, at least to the extent that it is

7    adding interest.

8         And we cited the *Vivendi* case which says that

9    the IRS rate is intentionally punitive to discourage

10   taxpayers from using the government as an involuntary

11   banker by determining the payment of taxes and that

12   the courts of the Second Circuit continue to limit

13   prejudgment interest to the U.S. Treasury Bill rate.

14   So the Court had used that IRS rate previously.

15        But now that we have *Liu*, it would be

16   prohibitive to -- for the Court to use a punitive

17   interest rate because it would violate the principles

18   of *Liu* and also of the NDAA which limit the award to

19   equitable net profits.

20        And I would also add that the *Liu* case bears

21   on other issues such as interest and gains, and the

22   claim that -- a claim that we have to pay interest

23   and gains and postjudgment interest concurrently.

24   And the *Liu* case certainly in our view prohibits

25   that, and it bears on the question of the net versus

1     gross.

2         There are additional amounts that were spent

3     apparently by Mr. Ahmed.  He had sought discovery

4     which was denied from the SEC that related to

5     additional amounts, to amounts that he spent in order

6     to achieve these profits that he allegedly received.

7     And there's also the amounts that Oak and NMR are

8     seeking or have -- or may obtain which would change

9     the net and gross.

10         So those issues, we think, are all issues

11     that prevent the Court at this point from just adding

12     to the judgment without considering the net amount

13     and which prevent the Court from awarding prejudgment

14     interest at the requested IRS rate.

15         THE COURT:  All right.  Mr. Yoder, what is

16     the minimal finding required of this Court on remand

17     given that there are numerous issues of how *Liu* would

18     have the disgorgement -- the ultimate judgment figure

19     adjusted?

20         MR. YODER:  Your Honor, the minimal finding

21     here would be -- would at least include a

22     recalculation of Mr. Ahmed's disgorgement obligation

23     consistent with the new ten-year statute of

24     limitations.  Beyond that, I would like to -- with

25     his quick permission, I'd like to have my colleague

1    Mark Williams answer your question about what more is

2    required here on remand.

3            THE COURT:  All right.  Mr. Yoder, will it be

4    you or Mr. Williams who will answer the question

5    about whether or not the Company D figure was

6    appropriately included in what you proposed as the

7    new disgorgement figure?

8            MR. YODER:  Mr. Williams will address that.

9    Thank you.

10           THE COURT:  All right.  Thank you.

11           Mr. Williams.

12           MR. WILLIAMS:  Thank you, Your Honor.

13           To answer your -- the last question first,

14   with respect to Company D, the SEC acknowledges

15   that's outside the ten-year statute of limitations;

16   and, therefore, did not include that 650,000 in its

17   disgorgement calculation.

18           If you look at the first line of docket

19   1904-1, you will see that with respect to that

20   transaction, the SEC stated outside the ten-year

21   statute of limitations; and, therefore, it's not

22   seeking disgorgement nor prejudgment interest with

23   respect to that fraud.

24           In addition, the SEC had noted that in its --

25   I believe in 1904, in the first paragraph of its

1  argument, when it stated that all of the fraud at

2  issue here is within the statute of limitations

3  except for, as Your Honor correctly noted, that

4  Company D fraud.  And so --

5          THE COURT:  So in the figure that you had

6  proposed, are you saying that the 650,000 was not a

7  part of your calculation?  And what is your

8  calculation without the Company D?  Is it the 64,171

9  and change or is it --

10         MR. WILLIAMS:  Yes.

11         THE COURT:  What?

12         MR. WILLIAMS:  I apologize, Your Honor.  I

13  didn't mean to interrupt you.

14         THE COURT:  Or is it the 63,404?

15         MR. WILLIAMS:  It is the 64,000 figure, Your

16  Honor.

17         THE COURT:  Okay.

18         MR. WILLIAMS:  And so if Your Honor is able

19  to look at Docket 1904-1, at the very bottom you'll

20  see our total calculations with respect to both

21  disgorgement and prejudgment interest, and that is

22  that 64 million figure as well as the 9.7 million

23  figure.  If you scroll up, you'll see that that does

24  not include the 650,000 Company D transaction that

25  occurred outside the ten-year statute of limitations.

```
 1            THE COURT:  Okay.  Thank you.  All right.
 2   You may continue.
 3            MR. WILLIAMS:  Thank you, Your Honor.
 4            If there is any specific questions, please
 5   don't hesitate to interrupt me.
 6            But to respond to Mr. Knag, as the initial
 7   matter, prejudgment interest is not intended to
 8   punish.  It's simply to deprive the violator of an
 9   interest-free loan, and that's all we're seeking to
10   do here.  I think if Your Honor looks at the Second
11   Circuit -- well, let me back up.
12            This Court previously made findings with
13   respect to all of defendant Ahmed's fraud.  And when
14   it came -- this Court may recall it bifurcated
15   summary judgement where it first determined liability
16   with respect to all of the SEC's allegations and then
17   it determined remedy.  And at the time this Court
18   determined remedies, Kokesh and -- had altered the
19   statute of limitations to five years.
20            With respect to the NDAA, as Mr. Yoder
21   outlined, this -- and as I think the Second Circuit
22   made very clear in its remand order, this Court is to
23   now apply the NDAA with respect to defendant Ahmed's
24   disgorgement obligation.  And so that does two
25   things:  One, it brings in the other fraud within the
```

1    statute of limitations.  Now, had Your Honor not made

2    findings on this, I would agree with Mr. Knag that we

3    would need Your Honor to do so in order to determine

4    what Mr. Ahmed's profits were; however, this Court

5    had already determined Mr. Ahmed's profits.  This

6    Court's judgment was already consistent with *Liu*

7    which is why, likely, neither the defendant nor the

8    relief defendant sought a remand to this Court

9    following *Liu,* because this Court was already focused

10   on Mr. Ahmed's profits.

11         And so this Court need only look back at its

12   rulings; namely, Docket 835, to see that this Court

13   is only -- I'm sorry, that the SEC is only asking

14   Mr. Ahmed to disgorge the money that he took.  And so

15   the SEC is only seeking the profits of Mr. Ahmed's

16   fraud consistent with *Liu* and consistent with the

17   NDAA.

18         There's no further briefing required, which

19   is why, Your Honor, in response to the SEC's filing

20   with respect to this issue, Docket 1904, neither the

21   defendant nor the relief defendants actually

22   challenged the SEC's numbers.

23         Moving to prejudgment interest, the exact

24   same thing, Your Honor, is that just as Your Honor

25   previously awarded prejudgment interest on the

1  earlier fraud, on the 40 million that was within the

2  five-year statute of limitations, it should do so

3  within -- I'm sorry, with respect to all of the fraud

4  that's now within the ten-year statute of

5  limitations.

6         Your Honor may recall that either the

7  defendant and/or the relief defendants have made this

8  argument previously, that the IRS underpayment rate

9  should be used -- should not be used, but rather the

10  rate at which an individual receives money when they

11  loan money to the government should be used.  Your

12  Honor rejected that then, and it should reject that

13  now.  *Liu* did not change anything with respect to

14  prejudgment interest, nor did the NDAA.

15         Moreover, the Second Circuit case *SEC v.*

16  *First Jersey Securities,* which I believe Mr. Levy

17  referenced earlier at 101 F.3d 1450, specifically

18  discusses this, how the SEC's under -- the IRS

19  underpayment rate is permissible.  And, in fact, the

20  Second Circuit specifically referenced that the rate

21  Mr. Knag was encouraging us use would be highly

22  inappropriate because the defendants had use of the

23  money.  And so this is an argument that has been made

24  previously that the Second Circuit as repeatedly

25  rejected.  And I'm referring also SEC v. Rosenthal,

62

1    426 F. App'x 1 as well as *SEC v. U.S. Environmental,*
2    *Inc.*, 114 F. App'x 426.
3            And so I -- at least I'm not aware of and I
4    do not believe the defendant nor the relief defendant
5    has given this Court any case where a court, much
6    less the Second Circuit, has found that the rate the
7    SEC is asking this Court to use again is improper, is
8    unconstitutional or is in anywhere error or wrong.
9    There are cases that specifically state that the rate
10   Mr. Knag is encouraging this Court to use is would
11   be, as I said, highly inappropriate.
12           The other case I would point this Court to
13   with respect to the prejudgment interest rate is a
14   Seventh Circuit case from 2009, *SEC v. Koenig*,
15   K-o-e-n-i-g.  That's 577 F.3d 736.  And that's where,
16   one, it does a -- what I think is a nice job
17   explaining why prejudgment interest is required
18   because it's unfair to punish somebody for -- I'm
19   sorry, to not punish somebody but to deprive -- to
20   allow an individual to take money in an earlier year
21   and order them to only pay that money back in a later
22   year because it does not reflect the time value of
23   the money.  Moreover, the Seventh Circuit in that
24   case specifically -- it stated that the IRS
25   underpayment rate is likely too low because it would

63

1   have almost surely cost the defendants more money to

2   borrow than the rate he's being charged.

3           The last thing I wanted to note is I think,

4   although Mr. Knag didn't reference it here, in their

5   briefs they talk about how the prejudgment interest

6   rate of 9 million is too high compared to the amount

7   that the defendant stole of 64 million.  And in that

8   Second Circuit case I had referenced earlier, *SEC v.*

9   *First Jersey Securities*, I believe the prejudgment

10  interest rate there was double the disgorgement rate.

11  And so this is not -- there's no support that this is

12  somehow too high or anything close.

13          Moreover, that prejudgment interest rate

14  reflects the time that the defendant had use of the

15  money.  He has not been charged prejudgment interest

16  since the asset freeze.  And so what defendant is

17  essentially asking this Court to do is to allow him

18  to -- you know, after he stole these funds, to not

19  charge him any sort of interest on that.  That does

20  the opposite of what the *Liu* court said, and that is

21  to return the defendant to the status quo.

22          Just looking at the corpus of frozen assets,

23  Your Honor, and how they've grown throughout this

24  case, and I submit it's common sense, that the use of

25  money enables people to obtain -- there's a cost to

64

1    using money.  And the defendant is essentially asking

2    this Court to not charge him and to simply -- for

3    example, with respect to the 2006 fraud, an example

4    would be the 1.8 million from Company D.  That was 16

5    years ago.  And so it's unfair for the defendant to

6    take 1.8 million in 2006 and to only be forced to

7    return payment in 2021 dollars 1.8 million.  And,

8    again, the Seventh Circuit really details this in

9    that *SEC v. Koenig* case.

10          Is there any questions Your Honor has that --

11   I think I addressed everything that Mr. Knag had.

12   But if I didn't, I apologize, and I'm happy to, Your

13   Honor.

14          THE COURT:  I don't think so because I think

15   that this ought to be a very limited issue on remand

16   and not an entire new foray, the issue of whether and

17   what *Liu* did in impacting prejudgment interest rates,

18   I think it's raised with the Second Circuit, not here

19   on remand; is that correct?

20          MR. WILLIAMS:  I think that's right, Your

21   Honor.  To the extent that Your Honor's previous

22   judgment used the -- the SEC is asking you to use the

23   same rate that it previously used.  And so to the

24   extent that the defendants have an issue with that,

25   that's exactly right, that they're going to have to

65

```
1   take that issue to the Second Circuit.  I do think it
2   would not make any sense for this Court to delve back
3   into that, especially when there's just simply been
4   nothing to suggest there's been a change in case law.
5   In fact, Liu is entirely consistent, as I mentioned
6   earlier, with the rate that this Court used in
7   calculating prejudgment interest.
8           THE COURT:  All right.  I would only ask one
9   more thing, Mr. Williams.  Your chart at 1904-1 that
10  focuses on Company D, the $650,000 management fee was
11  outside the statute of limitations, would you mind
12  just checking your figures to tell me whether your
13  calculation of the 64 million and change is what it
14  all adds up to without the $650,000 management fee.
15  And just if there is any change in your calculation
16  of the 64,000, would you let me know and let counsel
17  know right away.
18          MR. WILLIAMS:  Yes, I will, Your Honor.  If
19  there is no change, meaning if 1904-1 is accurate,
20  would Your Honor like me to let you know that as well
21  or simply just stay silent?
22          THE COURT:  Tell you what, if I don't hear
23  from you by the close of business Friday, I'll assume
24  that you have checked your numbers and stand by them
25  at the $64 million figure.  Okay?
```

66

```
 1          MR. WILLIAMS:  Yes, Your Honor.

 2          THE COURT:  Thank you.

 3          Now, we have just a couple minutes left, and

 4   I do want to address what is a perplexing issue to

 5   me, and that is the issue of liquidation because, on

 6   the one hand, I continue to get numerous requests for

 7   release of funds from the frozen assets for various

 8   purposes and, on the other hand, a growing concern

 9   from the receiver that the amount of frozen assets

10   are potentially awfully close to satisfying, if not

11   falling short of satisfying, the judgment.

12          Why are we not just answering that question

13   now with a carve out that unique assets, the jewelry,

14   for instance, the real estate, for instance, be

15   treated or be liquidated last in -- with an idea that

16   we may get rulings from the Second Circuit by the

17   time we get there or that we will take it up anew.

18   But why should we not be liquidating all the other

19   frozen assets, even the illiquid ones, as we've

20   intended all along?  Who wishes to take that up

21   first?  Mr. Levy?

22          MR. LEVY:  I think Mr. Knag is going to speak

23   to this issue.

24          THE COURT:  Okay.  Mr. Knag.

25          MR. KNAG:  Well, first of all, I would say
```

1    that we're in a very unusual circumstance.  The Court

2    has stated there are issues relating to *Liu* that

3    should be decided by the Second Circuit.  They relate

4    to interest and gains.  They relate to prejudgment

5    interest.  They relate to offsets, to the amount of

6    the judgment and other things.  The Court -- if the

7    Court were to enter a judgment that didn't resolve

8    those issues, there would be substantial doubt as to

9    what the actual amount to be liquidated should be.

10         And so I believe that -- and, of course, we

11   know that there's various problems with liquidating,

12   that we're going to have a problem that there will be

13   a receipt of tax consequences if appreciated assets

14   are sold.  Right now the Court is not allowing the

15   payment of taxes, but there would be tax consequences

16   if the appreciated assets didn't need to be

17   liquidated in the end.  The tax consequences would

18   still there be.  There would be problems with the

19   trust as to whether the legal character of the trust

20   had been changed by the Court's actions where they --

21         THE COURT:  You're referring to the family

22   trust?

23         MR. KNAG:  Yes, the trust money.  There's

24   numerous areas here where there's going to be

25   irreparable harm, as the Court recognized when the

1  Court initially stayed liquidation pending the

2  determination in *Liu*.  The problem is that while the

3  Court did stay that, there's been no determination

4  yet by the Second Circuit as to the effect of *Liu*.

5  So to go ahead and liquidate assets as if -- without

6  having resolved the *Liu* issues which are before the

7  Second Circuit would be grossly unfair and

8  prejudicial to the defendants.  So that's why we

9  believe the fairer way to proceed is to infer

10  liquidation.  Right now there's $124 million,

11  according to the receiver's report just filed

12  yesterday, and the amount allegedly stolen was just

13  over 60 million.  And they are trying to increase

14  that and under various theories.

15         But to allow the -- to require that there be

16  a liquidation when there's so much more than the

17  actual amount to be disgorged is unfair, and it would

18  be much fairer to the parties to allow the

19  liquidation to await the adjudication of the Second

20  Circuit, which the Court has said several times what

21  we're going to do is wait for the Second Circuit to

22  rule.

23         THE COURT:  Well, that's not quite right, is

24  it?  The concept was that we were awaiting *Liu* and

25  did not proceed with the liquidation.  The Second

1   Circuit had issued, I think, its order of February

2   19, 2019, saying that the defendants' motion for a

3   stay of enforcement of the judgment pending appeal

4   was denied because the appellant had not made a

5   showing he's likely to succeed on the merits or that

6   he would be irreparably injured absent a stay.  This

7   irreparable injury, you're saying now, exists where

8   the Second Circuit didn't find it previously.  Is

9   that right?

10        MR. KNAG:  The circumstances have changed

11   now, Your Honor.

12        THE COURT:  So what's irreparable now that

13   didn't exist when the issue of liquidation was taken

14   up by the Second Circuit?

15        MR. KNAG:  I think the problem was that the

16   defendant was pro se and didn't adequately make a

17   showing to the Second Circuit at that time.

18        But at this time we think it's clear that

19   with the -- at that time there were no *Liu* issues.

20   There were no problems that the Second Circuit had

21   certain issues as to how *Liu* would be applied and

22   that that might substantially affect the judgment.

23        This Court in its 1346, ECF 1346,

24   specifically found that the defendants will be

25   prejudiced in various ways if the liquidation occurs.

A-250

70

1    And, you know, that includes the taxes.  That

2    includes the effect on the trust.  That includes the

3    loss of the real estate.

4         So -- and this Court did say in ECF 1435 that

5    the liquidation of assets in satisfaction of the

6    judgment against the defendant has been stayed

7    pending resolution of the appeals in this case.

8    That's what -- that's a quote from Your Honor's

9    decision at 1435, ECF 1435.  So it was recognized by

10   Your Honor that there were -- there was prejudice

11   that was going to be followed if there was

12   liquidation.

13        And we think that at this point the matter

14   has been -- the assets have been frozen since 2015.

15   At this point, the Court -- if the Court enters a

16   ruling increasing the amounts or ordering prejudgment

17   interest or not making deductions under *Liu* because

18   you're going to leave that to the Second Circuit to

19   decide, you know, there's even -- there's much

20   more -- there are issues that weren't there when

21   Mr. Ahmed made that application back when that are

22   there now.  And the Court is expressly saying you're

23   not going to address these issues, but why would you

24   liquidate money when there is issues that are

25   outstanding that are substantial that have to be

A-251

1    determined by the Second Circuit.

2            THE COURT:  But are you conflating

3    liquidation with distribution?

4            MR. KNAG:  Well, no, because --

5            THE COURT:  Liquidation doesn't have

6    anything -- does not give any authority for any of

7    the frozen funds now in a liquid form to be

8    distributed pursuant to any disgorgement order or any

9    prejudgment interest finding.

10           MR. KNAG:  So you would -- what Your Honor is

11   suggesting is that you would perhaps liquidate

12   certain assets and perhaps not others but not make

13   any distribution pending the appeal?

14           THE COURT:  No distribution.  There's no

15   distribution.  That's why I'm having a hard time

16   understanding your claim of such unfairness and

17   prejudice when nothing gets distributed, but what

18   does happen is that the amount that is frozen is a

19   finite figure as opposed to subject to the vagaries

20   of are the stock market or otherwise.

21           MR. KNAG:  If Your Honor -- but there would

22   be prejudice.  If Your Honor -- the stocks that are

23   held here have appreciated substantially.  If they

24   are sold, the IRS is going to be looking for a tax,

25   for a capital gains tax on those assets.  And if it

1  turns out that they shouldn't have been sold, then

2  there is a -- there's an issue because of the fact

3  that the tax has been -- the tax will have been

4  incurred.  The IRS won't forget about the tax.  The

5  IRS will treat -- presumably, would treat these

6  assets as having been sold since they were sold, and

7  the tax would attach.  So there would be a big -- it

8  would be a big problem.

9       Then if it turned out in the end that there

10  were assets where there were losses and certain

11  assets that are appreciated had been sold and assets

12  where there were losses had not been sold, then there

13  would be an unnecessary tax, even if the end these

14  certain assets have to be liquidated to satisfy the

15  judgment.  Any liquidation in this matter should be

16  done once it's determined how much has to be raised

17  and then done in a tax efficient way.

18       And also there's separate issues as to the

19  trust and to the augments as to whether they should

20  have been included in this judgment.  And the

21  question of whether -- if money is taken from -- you

22  say if the money didn't stay in the trust, then there

23  would be questions of -- prejudice to the trust.  If

24  the money stayed in the trust, they would still have

25  the potential for capital gains on the stocks that

1    were sold.

2          So all those circumstances indicate that

3    there would be a huge prejudice if there's

4    liquidation of appreciated assets.  There's a lot of

5    assets that are in cash; and those assets, of course,

6    they've already been liquidated.

7          So that's why we feel that, you know, this

8    should be -- this should be allowed to continue.

9    And, you know, we do want to rely on -- we have

10   relied and we continue to rely on Rule 62(d) which

11   talks about the equivalent of a supersedeas bond.  In

12   this case, we believe that $124 million in assets is

13   more than sufficient, should be more than sufficient

14   to allow the Court to stay pursuant to Rule 62(d).

15   There is no reason why this doesn't fit the

16   requirements of Rule 62(d) to allow a stay of

17   liquidation based on the fact that we have so much

18   money in the till.  I don't know where the argument

19   comes that we have 124 million that might be due or

20   something close to it.  The SEC in its request is

21   asking for 90-some million.

22          And so I would think that the requirements of

23   Rule 62(d) should be seen -- should be judged to have

24   been met.

25          And also, Your Honor, I would say this, that

1   Your Honor said you would consider putting in a

2   liquidation schedule.  If the Court felt that

3   liquidation should be considered, I think that

4   partial litigation should be considered.  Certainly

5   there should be a revised receiver report setting out

6   a plan and then an opportunity for response by the

7   parties so that we're not doing it without any

8   particulars before us.

9         But, again, I think that under Rule 62(d),

10  the Court -- with all this money sitting there, $124

11  million, the Court can reasonably conclude that this

12  is adequately secured and, therefore, that the Rule

13  62(d) supersedeas bond should allow the stay,

14  particularly with all of these legal issues that the

15  Court is not deciding but is leaving to the Second

16  Circuit to decide and, therefore, making much clearer

17  the fact that there are substantial issues that need

18  to be decided before the amount is determined finally

19  by the Second Circuit.

20        THE COURT:  But that's a different issue from

21  what the value of liquidated frozen assets would be,

22  isn't it?

23        MR. KNAG:  No.  The question -- yes, that's a

24  different issue.  But the value is well in excess of

25  the amount requested for a judgment.  And as I say,

1  the judgment -- the fact that the judgment is subject

2  to the need for the Second Circuit to rule on

3  important issues relating to *Liu* and various other

4  matters is distinctly different from the circumstance

5  when they denied the stay back in 2015 or back in

6  2018 or '19.  So, you know, it is related.

7        THE COURT:  Okay.  I'm going to ask the SEC

8  to respond to any of the positions that you have

9  taken with respect to why the Court should not

10  proceed to liquidation in whole or in part at this

11  time, notwithstanding the pendency of numerous open

12  issues, understanding that no distribution is

13  contemplated by the fact of liquidation.

14        MR. WILLIAMS:  Thank you, Your Honor.

15        Consistent with the SEC's responsive brief,

16  the Court should proceed to liquidation, and I think

17  the Court should proceed to liquidation in whole or,

18  at minimum, in part.

19        And to answer or to respond to some of

20  Mr. Knag's statements and arguments, the first thing,

21  Your Honor, I wanted to answer your question is all

22  of the issues are the same -- let me back up.

23        Nothing has changed from Mr. Ahmed's

24  interlocutory appeal stating that liquidation should

25  not occur.  All of the arguments that Mr. Knag made,

1    I think, were the same arguments that Mr. Ahmed made

2    to the Second Circuit, and that is there were

3    prejudiced with results if a liquidation occurred

4    before the appeals were finalized.  Your Honor

5    previously rejected it.  The Second Circuit

6    previously rejected it.  Nothing has changed here.

7          And I submit that, assuming the Court were to

8    what in my view is act consistently with the remand

9    order and to apply the NDAA in this case, and

10   assuming the Court were to exercise its discretion

11   and order disgorgement and prejudgment interest and

12   decline Ahmed's request to allow him to keep the

13   money that this Court had found he'd stolen, the

14   judgment is only -- it's going up substantially.  And

15   so it would go the other way.  It simply makes it

16   less likely that there are sufficient assets to

17   satisfy the judgment.  And so that's certainly not a

18   reason to decline liquidation so these judgment -- so

19   these assets can fluctuate more.

20         One point I want to make, Your Honor, is it

21   may sound like today that the defendant and relief

22   defendants are seeking to pledge these assets.  But I

23   submit, Your Honor, you likely know better from the

24   last two and a half years after they made the same

25   request.  They turn around and I believe they're

A-257

1    still seeking in excess of $10 million.  And so I

2    just encourage Your Honor to recall that they are

3    going to make requests in the future.  They are going

4    to continue bombarding this Court with requests to

5    release funds, even though today they're asking you

6    to treat these same assets as a supersedeas bond

7    securing the judgment.

8           But even if you could be convinced that they

9    would stop these requests and that these assets would

10   in fact sit there, they are still not sufficient to

11   satisfy the judgment.  Mr. Knag referenced

12   disgorgement of 64 million, but there is also 9

13   million prejudgment interest.  There's also a $21

14   million civil penalty.  Postjudgment interest alone

15   is over 4.3 million.  That gets to more than $99

16   million.  And so it's unfair for Mr. Knag to

17   reference a judgment of 64 million when just those

18   things are 99.3, and that does not include the

19   interest and gains on frozen assets.

20          And Your Honor may recall from Dockets 68 and

21   86 early in this case when the parties pegged the

22   frozen assets at approximately 77 million.  No one is

23   disputing there has been huge gains throughout the

24   asset freeze.  And so the defendants are simply, I

25   think, implicitly arguing that they should get those

1    gains but they shouldn't have to pay any of them over

2    or pay any prejudgment interest.  And that's

3    inconsistent with the law; but, regardless, it's

4    inconsistent with this Court's order.

5            And so exactly what Your Honor noted earlier

6    is that I do not -- it is woefully unclear whether

7    there are sufficient assets to satisfy this judgment.

8    In fact, Mr. Knag's arguments that taxes need to be

9    paid on some of these things only further suggest

10   that it's unfair to look at the market value of some

11   of these assets and not to take into account costs or

12   taxes or other things that are going to come from

13   that.

14           So with respect to 62(d), and I believe we

15   touched on this in the brief, is this is not a

16   sufficient bond.  It's not sufficient because they

17   continue to ask these assets be released.  It's not

18   sufficient because we don't know the true value.

19   But, Your Honor, it's especially not sufficient

20   because the assets fluctuate.  And just 14 months

21   ago, I believe the receiver had pegged the value of

22   the assets at less than 81 million.  And as I noted

23   previously, Your Honor, even before -- even excluding

24   interest and gains, we're seeking now a $99.3 million

25   judgment.

```
 1          So it's a very real risk, and I ask Your
 2    Honor to look at who bears that risk.  If these
 3    assets go down in value and the judgment is not
 4    satisfied, there is no way the SEC will ever be able
 5    to obtain assets from Mr. Ahmed.  He is in India.
 6    He's a fugitive.  We have strong reason to believe
 7    that he will never be returning.  Even if we could
 8    access assets in India, which I don't believe we can,
 9    he's holding them in names of nominees including his
10    mother.  So the victims, the SEC bears the risk if
11    these assets go down.  And Mr. Ahmed is saying, well,
12    if they go up, then I get to make some money.  And so
13    essentially what's he asking this Court to do is,
14    well, I want a scenario after stealing more than $64
15    million, I want a heads I win, tails my victims lose.
16    And I encourage Your Honor to not do that anymore.
17          And we are in a fortunate place right now,
18    unlike where we were 14 months ago, that there may be
19    sufficient assets to satisfy the judgment.  If there
20    is another, whether you want to call it a market
21    correction or a market reduction or a crash or what
22    have you, we may not be in that place in the future.
23    And so, moreover, we're not even going to know the
24    judgment if this liquidation does not occur as it
25    continues to tick up because of postjudgment
```

```
 1    interest.

 2            And so I just, you know, strenuously urge

 3    this Court to order liquidation, not only to protect

 4    the judgment, not only to satisfy the judgment.  And

 5    I understand that Your Honor is staying on

 6    distribution and that's fine.  The SEC is not

 7    objecting to that.  But what 62(d) is really supposed

 8    to do is to secure a judgment.  No matter what Your

 9    Honor does, we're going to be under 62(d).  The

10    dispute here is whether we should be putting cash in

11    accounts equivalent to the judgment or whether we

12    should keep these assets fluctuating where if they go

13    down, the judgment will not be satisfied, and if they

14    go up, the defendant will say, well, that's my money.

15    That's not what Rule 62 is intended to do.  And so

16    Your Honor is well within its discretion to say you

17    will stay distribution under 62(d), but there must be

18    sufficient assets placed into an account, and the

19    only way to do that is to liquidate.

20            And, Your Honor, there's no reason to not ask

21    the receiver to a structured liquidation where

22    certain assets are liquidated first, certain things

23    that nobody could argue have any prejudice such as

24    stocks or even cash in accounts, to put them into a

25    trust account and we can even see where we're at.
```

A-261

```
 1    But there's also no reason to direct the parties to
 2    engage in more litigation over this.  This docket is
 3    now almost 2,000 filings.  Your Honor is well aware
 4    of the issues.  The parties are well aware what the
 5    judgment is.  We're well aware of the assets.  We
 6    have a receiver.  It's simply -- and Your Honor has
 7    already ordered this.  And I understand it was stayed
 8    pending Liu, but Liu did not change disgorgement.  It
 9    didn't change Your Honor's findings, which is why, in
10    my opinion, neither the defendant nor the relief
11    defendant sought a remand of the appeal so this Court
12    could order -- so this Court could amend its judgment
13    consistent with Liu.  The judgment was already
14    consistent with Liu.
15            So I'm happy to answer any other questions,
16    and I apologize if I'm going on.  But, Your Honor,
17    this is -- this is a chance for the litigation that
18    has -- what I think has plagued this Court to come to
19    an end, and it's very unfair to the SEC and the
20    defendants' victims were liquidation to not occur.
21            THE COURT:  All right.  We have consumed all
22    of the time that I have for you.  I do appreciate all
23    of the thoughtful and articulate briefing and
24    argument today, but I do need to conclude our
25    argument.
```

82

```
1          If the defendants wish five more minutes to
2    address anything that has been raised but not
3    previously addressed by them, they may proceed.
4          Mr. Levy or Mr. Knag.
5          MR. KNAG:  Your Honor, I would point out that
6    another issue -- you know, there are other issues on
7    the appeal that are -- such as the nominee issue,
8    such as the trust issue that are also in play and
9    that the SEC doesn't know what the amount is that
10   somehow they're entitled to.  I don't know how the
11   receiver is going to know what the total amount is
12   that they will be entitled to.  The receiver in its
13   prior report made an effort to determine that, and
14   that was going to be how much they were going to be
15   liquidated.  That analysis, I guess, would have to be
16   redone and together whether an analysis of which
17   assets could be not liquidated, which assets could be
18   liquidated.
19         But I do think that the time has shown that
20   they have not been -- it's been six years that this
21   existing arrangement has been in place.  It will be
22   another year, probably, before the Second Circuit
23   decides.  But there has been briefs, there have been
24   briefs filed by the defendants in the Second Circuit.
25   They will have to be refiled, and then the state has
```

1   to -- the government will have to respond.  But

2   another year, it seems to me, is much fairer in

3   avoiding -- in that it will avoid all the prejudicial

4   elements that would occur if we started selling and

5   incurring taxes and impairing the trust legally and

6   other negative consequences.

7           THE COURT:  All right.  If there's nothing

8   further then, I thank counsel for their very helpful

9   analysis of a complex case, and I wish you a pleasant

10  afternoon.  We stand in recess.

11          (Proceedings concluded, 12:26 p.m.)

12

13              C E R T I F I C A T E

14      RE: UNITED STATES SECURITIES AND EXCHANGE
                COMMISSION v. AHMED, ET AL.
15              No. 3:15-cv-00675-JBA

16

17          I hereby certify that the within and

18  foregoing is a true and accurate transcript taken in

19  the aforementioned matter to the best of my skill and

20  ability.

21

22          /s/ Melissa J. Cianciullo_____

23      MELISSA J. CIANCIULLO, RDR, CRR, CRC
                Official Court Reporter
24          United States District Court
                915 Lafayette Boulevard
25            Bridgeport, CT 06604
                  (203) 606-1794

A-264

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>                        Plaintiff,<br><br>         v.<br><br>IFTIKAR AHMED,<br>                  Defendant, and<br><br>IFTIKAR AHMED SOLE PROP; *et al*<br>                        Relief Defendants | Civil Action No. 3:15-cv-675 (JBA)<br><br><br><br>July 08TH, 2021 |

## NOTICE OF APPEAL

Notice is hereby given that the *pro se* Defendant in the above mentioned case, hereby appeals to the United States Court of Appeals for the Second Circuit from the following Orders and Rulings of this esteemed Court.

1. Redetermination of Defendant's Disgorgement Obligation [Doc. #1997] dated June 16TH 2020; and

2. Redetermined Final Amended Judgment [Doc. #2011] dated July 06TH 2021.


Respectfully Submitted,


Dated:  July 08TH, 2021

/s/ Iftikar Ahmed
_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India
Tel:    +91-983-008-9945
e-mail: iftyahmed@icloud.com
*Pro Se*

1

A-265

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

A-266

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
)
UNITED STATES SECURITIES AND )
EXCHANGE COMMISSION, )         No. 3:15-CV-675 (JBA)
)
                      Plaintiff, )
)
          v. )
)
IFTIKAR AHMED, )
                      Defendant, and )
)
IFTIKAR ALI AHMED SOLE PROP *et al.*, )
)              JULY 09, 2021
                      Relief Defendants )
_____ )

## <u>NOTICE OF APPEAL</u>

Relief Defendants Shalini Ahmed, her three minor children I.1, I.2, and I.3, I-Cubed Domains, LLC, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC, DIYA Real Holdings LLC (together, the "Relief Defendants"), hereby appeal to the United States Court of Appeals for the Second Circuit from the following Orders and Rulings this Court entered:

1. Redetermination of Defendant's Disgorgement Obligation [ECF No. 1997 dated June 16, 2020 (sic, should be June 16, 2021)]

2. Redetermined Final Amended Judgment [ECF No. 2011 dated July 6, 2021]

A-267

Respectfully Submitted,

By:  /s/ Paul E. Knag

Paul E. Knag – ct04194
pknag@murthalaw.com
Murtha Cullina LLP
177 Broad Street, 16th Floor
Stamford, Connecticut 06901
Telephone: 203.653.5400
Facsimile:  203.653.5444

*Attorneys for Relief Defendants
I-Cubed Domain, LLC, Shalini Ahmed,
Shalini Ahmed 2014 Grantor Retained
Annuity Trust, Diya Holdings, LLC, Diya
Real Holdings, LLC, I.I. 1, I.I. 2 and I.I. 3*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing will be sent by e-mail to all

parties by operation of the Court's electronic filing system or by mail to anyone unable

to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may

access this filing through the Court's CM/ECF system.

 /s/ Paul E. Knag
Paul E. Knag – ct04194

2