# 21-1686-cv(L), 21-1712-cv(CON)

# United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

NMR E-TAILING, LLC,

*Plaintiff,*

– v. –

SHALINI AHMED, I.I. 1, a minor child, by and through his next freinds IFIKAR
and SHALINI AHMED, his parents, I.I. 2, a minor child, by and through his next
freinds IFTIKAR and SHALANI AHMED, his parents, I.I. 3, a minor child, by
and through his next freinds IFTIKAR and SHALINI AHMED, his parents,
I-CUBED DOMAINS, LLC, SHALINI AHMED 2014 GRANTOR
RETAINED ANNUITY TRUST, DIYA HOLDINGS, LLC,
DIYA REAL HOLDINGS, LLC, IFTIKAR A. AHMED,

*Defendants-Appellants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## IFTIKAR A. AHMED

VINCENT LEVY
GREGORY DUBINSKY
ANDREW C. INDORF
HOLWELL SHUSTER & GOLDBERG LLP
*Attorneys for Defendant-Appellant*
  *Iftikar A. Ahmed*
425 Lexington Avenue
New York, New York 10017
(646) 837-5151

IFTIKAR ALI AHMED SOLE PROP,

*Defendants,*

v.

JED HORWITT,

*Receiver-Appellee.*

# <u>TABLE OF CONTENTS</u>

Page

Introduction ...................................................................................................1

Argument....................................................................................................3

I.   This Court Should Reverse The District Court's Retroactive
     Application Of The NDAA's New, Ten-Year Limitations Period ................3

     A.   The Motions Panel's Remand Order Is Not Law Of The Case ...........3

     B.   The SEC Misstates The Cross-Appeal Rule, Ignoring Supreme
          Court Precedent And This Court's Own Rulings..................................5

     C.   The SEC Misses The Point On *Plaut*, Because The District Court's
          2018 Judgment Was Final As To The SEC .........................................8

     D.   The NDAA Cannot Be Construed To Retroactively Revoke Mr.
          Ahmed's Vested Statute-Of-Limitations Defense .............................10

     E.   Applying The NDAA To Revive Mr. Ahmed's Time-Barred Claims
          Would Violate The Ex Post Facto Clause..........................................12

II.  The Remedial Order Should Be Vacated .....................................................15

     A.   For The Company C Transactions, There Were No Unlawful Profits
          Caused By A Securities-Law Violation ..............................................15

     B.   The Disgorgement Order Should Be Reduced To Account For $35
          Million Oak Already Obtained From Mr. Ahmed ..............................18

     C.   On Remand, The District Court Should Allow A Credit For Any
          Further Recoveries By Oak ................................................................21

     D.   The Penalty Should Be Vacated.........................................................22

III. The Court Should Vacate The Summary-Judgment Ruling.........................22

     A.   The SEC Has No Response To Mr. Ahmed's Claim That He
          Was Deprived Of Notice And A Meaningful Opportunity To
          Respond ..............................................................................................22

i

B.    The District Court's Discrete Orders Restricting Discovery And Denying Funds For Counsel Were Unnecessary And Improper ........25

IV.   The District Court's Award Of Interests And Gains Was Error ...................28

Conclusion ...............................................................................................29

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bowles v. Russell*,
551 U.S. 214 (2007) ...................................................................7

*Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*,
888 F.2d 260 (2d Cir. 1989) ...................................................29

*Clark v. Martinez*,
543 U.S. 371 (2005) ...................................................................9

*Council Tree Commc'ns., Inc. v FCC*,
503 F.3d 284 (3d Cir. 2007) .....................................................4

*Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*,
415 F.3d 1171 (10th Cir. 2005) ................................................4

*Degen v. United States*,
517 U.S. 820 (1996) ........................................................... 25, 26

*Doe v. Pataki*,
120 F.3d 1263 (2d Cir. 1997) .................................................12

*El Paso Nat. Gas Co. v. Neztsosie*,
526 U.S. 473 (1999) ...............................................................5, 6

*Empire Blue Cross & Blue Shield v. Finkelstein*,
111 F.3d 279 (2d Cir. 1997) ...................................................25

*Finkelstain v. Seidel*,
857 F.2d 893 (2d Cir. 1988) .....................................................7

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) ...................................................................7

*Greenlaw v. United States*,
554 U.S. 237 (2008) ......................................................... passim

*In re Enter. Mortg. Acceptance Co., Sec. Litig.*,
    391 F.3d 401 (2d Cir. 2004) ............................................................. 1, 10, 11, 12

*In re Vivendi Universal, S.A. Litig.*,
    284 F.R.D. 144 (S.D.N.Y. 2012).......................................................28

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*,
    38 F.3d 1279 (2d Cir. 1994) ..........................................................6, 9

*Jennings v. Stephens*,
    574 U.S. 271 (2015) ........................................................................5

*Johnson v. Burken*,
    930 F.2d 1202 (7th Cir. 1991) ........................................................4

*Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*,
    61 F.3d 608 (8th Cir. 1995) ...........................................................11

*Kokesh v. SEC*,
    137 S. Ct. 1635 (2017)........................................................ 11, 12, 13

*Kresberg v. Int'l Paper Co.*,
    149 F.2d 911 (2d Cir. 1945) ...........................................................8

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) ......................................................................10

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
    765 F.2d 966 (2d Cir. 1985) .........................................................14

*Morley Constr. Co. v. Md. Cas. Co.*,
    300 U.S. 185 (1937) ........................................................................5

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*,
    266 F.3d 112 (2d Cir. 2001) .........................................................28

*Plaut v. Spendthrift Farm, Inc.*,
    514 U.S. 211 (1995) ................................................................ 8, 9, 12

iv

*Rezzonico v. H & R Block, Inc.*,
  182 F.3d 144 (2d Cir. 1999) ...................................................5

*Rivers v. Roadway Express, Inc.*,
  511 U. S. 298 (1994) .............................................................12

*Sammie Bonner Constr. Co. v. W. Star Trucks Sales, Inc.*,
  330 F.3d 1308 (11th Cir. 2003) ...............................................4

*SEC v. de Maison*,
  2021 WL 5936385 (2d Cir. Dec. 16, 2021) ...............................22

*SEC v. Levin*,
  849 F.3d 995 (11th Cir. 2017) ................................................20

*SEC v. Manor Nursing Ctrs., Inc.*,
  458 F.2d 1082 (2d Cir. 1972) .................................................28

*SEC v. Palmisano*,
  135 F.3d 860 (2d Cir. 1998) ...................................................20

*SEC v. Penn*,
  2018 WL 437844 (S.D.N.Y. Sept. 14, 2018) .............................21

*SEC v. Penn*,
  2017 WL 5515855 (S.D.N.Y. Aug. 22, 2017). ...........................21

*SEC v. Unifund SAL*,
  910 F.2d 1028 (2d Cir. 1990) .................................................27

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) ........................................... 6, 7, 8

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) ..............................................................26

*United States v. Abuhamra*,
  389 F.3d 309 (2d Cir. 2004) ...................................................23

*Weingarten v. United States*,
  865 F.3d 48 (2d Cir. 2017) ...................................................................................10

## U.S. Statutes

28 U.S.C. § 1961 ...................................................................................................28

## Rules

Fed. R. Civ. P. 56(c)..............................................................................................23

## **INTRODUCTION**

The SEC's defense of the judgment below ignores controlling law and relies upon supposed findings the lower court never made.[1]

*First*, the court below improperly interpreted the NDAA to strip Mr. Ahmed of a vested statute-of-limitation defense that was adjudicated in his favor in a prior judgment the SEC never cross-appealed. Faced with the Supreme Court's clear instruction in *Greenlaw v. United States*, 554 U.S. 237 (2008), that the cross-appeal rule is mandatory and admits of no exception, the SEC nonetheless insists the doctrine is discretionary and the court was free to reopen the judgment. How can that be squared with *Greenlaw*? The SEC never says. It never even cites *Greenlaw*. Nor does it bother to address *In re Enter. Mortg. Acceptance Co., Sec. Litig.*, 391 F.3d 401, 405 (2d Cir. 2004), which held that courts should not read a statute to eliminate a vested statute-of-limitation defense—as the court below did—unless the statute is "so clear it [can] sustain *only [that] one* interpretation." The NDAA nowhere contains such a clear statement.

*Second*, the court below legally erred in determining the disgorgement amount. The court disgorged profits calculated as the difference between the purchase and sale prices of a security (Company C) without ever finding that Mr.

---

[1] Mr. Ahmed adopts all defined terms from his opening brief, and citations to "Dkt. _" refer to the district court docket, below. All emphases in quotations are added unless otherwise noted.

Ahmed's profit was caused by a securities-law violation; it also declined to give Mr. Ahmed any credit for $35 million of lawfully-earned assets that Oak seized from Mr. Ahmed for the same alleged wrongdoing at issue here. The SEC seeks to justify these results by inventing findings the district court never made. Thus, the SEC says Mr. Ahmed should disgorge his Company C profits because he violated his fiduciary duties when he acquired his stake in Company C. That's wrong on the law, but it's also not what the court found: It found a securities-law violation when Mr. Ahmed *sold* Company C shares, not when he *acquired* them, and the court made no finding that the sale price was inflated. As for the court's order declining to give Mr. Ahmed credit for the $35 million in assets Oak seized, the SEC again ignores Circuit law, and offers a fanciful re-write of the decision below.

*Third*, although the SEC defends various discovery orders entered below, it basically ignores Mr. Ahmed's argument that entering summary judgment was unlawful and unconstitutional. The SEC does not dispute that the court entered judgment against Mr. Ahmed although he had no ability to review or respond to more than 90 percent of the evidence against him, including substantial portions of the SEC's moving papers and nearly *all* the testimony of the SEC's most important witness. Whatever may be said of the discovery orders that led to the *ex parte* proceedings the court superintended, finding liability and entering a massive judgment under those circumstances plainly violated Rule 56 and due process.

2

**ARGUMENT**

I.  **This Court Should Reverse The District Court's Retroactive Application Of The NDAA's New, Ten-Year Limitations Period**

   A.  **The Motions Panel's Remand Order Is Not Law Of The Case**

In response to Mr. Ahmed's appeal of the district court's decision applying the new NDAA limitation period, the SEC first argues Mr. Ahmed's objections are "barred by the law of the case, since they were decided—and rejected—by necessary implication in the remand order."  SEC Br. 34.  Wrong.

The SEC's threshold argument comes with some chutzpah; the SEC itself asked the motions panel ***not to decide*** Mr. Ahmed's objections.  The SEC argued that "full rebuttal" of Mr. Ahmed's statutory and constitutional objections to applying the NDAA's new limitations period "require[d] more than the 7 days and 2,600 words permitted for a reply," and so it urged that "***the appropriate course of action here is to remand now so that this Court may better adjudicate [the arguments] later with the benefit of the district court's informed evaluation***" of those arguments.  Case No. 18-2903, ECF No. 491 at 9.

In an unfortunate litigation tactic—which can only be called a switcheroo— the SEC now insists the Court ***cannot adjudicate*** Mr. Ahmed's constitutional or statutory claims, because the motions panel supposedly did what the SEC said shouldn't be done.  SEC Br. 34.  This makes no sense.  The motions panel, in granting the SEC's application for a limited remand, plainly adopted the SEC's

3

suggestion to allow the district court to adjudicate the NDAA questions in the first instance. That is why the remand order instructed the district court to consider the appropriate disgorgement "consistent with" § 6501 of the NDAA and, "if appropriate," to enter an amended judgment. Case No. 18-2903, ECF No. 535. Unsurprisingly, the order also preserved the rights of "either party [to] appeal in the normal course" from a decision on remand. *Id.*

Plainly the motions panel did not, *sub silentio*, resolve the weighty issues of first impression posed by Mr. Ahmed's objections—namely, whether the NDAA can and does enlarge the limitation period retroactively—without providing ***any*** explanation or reasoning whatever. Just as Congress does not hide elephants in mouseholes, this Court does not silently resolve important constitutional and statutory questions in remand orders—still less when the SEC tells this Court that addressing those questions would "require[] more than the 7 days and 2,600 words" allotted. Case No. 18-2903, ECF No. 491 at 9.

Regardless, "the 'decision of a motions panel is not binding for purposes of law of the case.'" *Council Tree Commc'ns., Inc. v FCC*, 503 F.3d 284, 292 (3d Cir. 2007) (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1176 n.3 (10th Cir. 2005)); *see also Sammie Bonner Constr. Co. v. W. Star Trucks Sales, Inc.*, 330 F.3d 1308, 1311 (11th Cir. 2003) (same); *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991) (same). This rule carries particular

4

force where, as here, the issue goes to jurisdiction. *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) (law-of-the-case doctrine does not prevent courts of appeals from "revisit[ing] [a] motions panel's decision on jurisdiction").

### B. The SEC Misstates The Cross-Appeal Rule, Ignoring Supreme Court Precedent And This Court's Own Rulings

On the merits, the SEC claims the cross-appeal rule is "a rule of practice that may be disregarded," and that the court below properly exercised its "discretion" in that regard. SEC Br. 36. This assertion flies in the face of the Supreme Court's contrary instructions, as the SEC inexplicably ignores.

The caselaw leaves no ambiguity that the cross-appeal rule is mandatory. As Mr. Ahmed explained (but the SEC blithely ignores), the Supreme Court has instructed that the cross-appeal rule is ***mandatory without exception***, describing its requirements as "inveterate and certain" and "firmly entrenched." *Greenlaw v. United States*, 554 U.S. 237, 244-45 (2008) (quoting *Morley Constr. Co. v. Md. Cas. Co.*, 300 U.S. 185, 191 (1937), and *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999)); *see also Jennings v. Stephens*, 574 U.S. 271, 276 (2015) (reaffirming "familiar" rule that "an appellee who does not cross appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary'" (citation omitted)). Indeed, the Supreme Court emphasized, "***in more than two centuries of repeatedly endorsing the cross-appeal requirement, not a single one of [the Supreme Court's] holdings has <u>ever</u>***

5

*recognized an exception to the rule*." *Greenlaw*, 554 U.S. at 245 (quoting *El Paso*, 526 U.S. at 480).

Remarkably, the SEC ignores this controlling law. Indeed, in arguing the cross-appeal rule "may be disregarded," SEC Br. 36, the SEC does not even mention *Greenlaw*—let alone explain why Mr. Ahmed's extensive discussion of it, both here (Br. 20-25) and below (Dkt. 1906 at 9; A-192-95), is wrong. *Greenlaw* instructs that, jurisdictional or not, the cross-appeal requirement is mandatory— and not subject to judge-made exceptions. As the SEC all but admits in ignoring *Greenlaw*, that ruling is fatal to the SEC's position. Under *Greenlaw*, the SEC cannot escape the mandatory rule that, absent a cross-appeal, an appellee "may not seek to enlarge its rights under the judgment by enlarging the amount of damages or scope of equitable relief." *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286 (2d Cir. 1994).

The SEC does try to distinguish *Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014), but to no avail. The SEC's effort could not circumvent *Greenlaw*'s clear instructions that the rule is mandatory even if not jurisdictional, and the effort also fails on its own terms. In *Swatch*, this Court characterized the cross-appeal requirement as "jurisdictional in nature," holding that courts of appeals "*have no jurisdiction to review [a judgment] in the absence of a proper cross-appeal*." 756 F.3d at 93. The SEC claims *Swatch*

6

"described as 'jurisdictional' the appellee's failure to designate in its notice of cross-appeal the district court order dismissing its counter-claim."  SEC Br. 35-36. Indeed.  But if this Court lacks jurisdiction to grant relief to an appellee who fails to make a "***designation***" in a properly-filed notice of cross-appeal, then—*a fortiori*—this Court plainly lacks jurisdiction when the appellee ***does not notice any cross-appeal at all***.  The SEC never cross-appealed, so the relief awarded to it in 2018 cannot be expanded as a matter of jurisdiction.  *Cf. Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012) (courts of appeals "do not have the authority to waive the jurisdictional requirements" governing notices of appeal).

Despite the clear holdings of *Greenlaw* and *Swatch*, the SEC insists that the cross-appeal requirement is a "rule of practice" a court may "disregard[]."  SEC Br. 36.  But the SEC's sole authority, *Finkelstain v. Seidel*, 857 F.2d 893 (2d Cir. 1988), not only is factually irrelevant for the reasons explained in Mr. Ahmed's opening brief (pp. 24-25, to which the SEC has no response), but also plainly does not survive *Greenlaw* and the Supreme Court's landmark case in *Bowles v. Russell*, 551 U.S. 214 (2007).  In *Bowles*, of course, the Supreme Court held "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement," and *overruled* prior decisions allowing "equitable exceptions to [such] jurisdictional requirements."  551 U.S. at 214.  Just a year later, the Supreme Court in *Greenlaw* affirmed that the cross-appeal requirement—jurisdictional or not—is mandatory

7

without exception.  554 U.S. at 244-45.  This Court's subsequent decision in *Swatch* comes in the wake of these cases and concludes that, like the other requirements of Federal Rule of Appellate Procedure 3, the cross-appeal rule is "jurisdictional."  756 F.3d at 93.  That is dispositive.

### C.     The SEC Misses The Point On *Plaut*, Because The District Court's 2018 Judgment Was Final As To The SEC

The SEC does not argue § 6501 of the NDAA expanded this Court's jurisdiction and allowed it to ignore the cross-appeal requirement.  Nor could it. This Court has long required a plain statement to expand or alter federal jurisdiction, *see Kresberg v. Int'l Paper Co.*, 149 F.2d 911, 913 (2d Cir. 1945), and the NDAA's passing reference to "pending" cases does not come close.

Worse, any such reading of the NDAA would run up against the Supreme Court's decision in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995).  Under *Plaut*, Congress cannot constitutionally reopen the 2018 judgment to grant the SEC additional relief.  *Plaut* was clear on this point:  Once a court enters a "judgment[] from which all appeals have been forgone," "Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was."  *Id.* at 227 (emphasis in original).

The SEC's response to *Plaut*—that **Mr. Ahmed's** appeal was still pending— ignores the cross-appeal rule, which preserves the same finality interests that animate *Plaut*.  The point is that **the SEC's** appeals and cross-appeals were

"forgone," so the 2018 judgment denying disgorgement beyond five years *was final as to the SEC*.

Consider how this case would have played out had Mr. Ahmed *also* declined to appeal. In *that* circumstance, *Plaut* would plainly have barred any effort by Congress to permit the SEC to seek augmented relief, because the judgment would have been final as to *all* parties. Indeed, that was the precise situation in *Plaut*. Here, the SEC effectively seeks to co-opt Mr. Ahmed's exercise of *his* appellate rights (rights the SEC forfeited) to obtain a massive windfall at Mr. Ahmed's expense. But the cross-appeal rule prohibits this outcome, as it bars an appellee that has not cross-appealed from seeking "to enlarg[e] the amount of damages or scope of equitable relief." *Int'l Ore*, 38 F.3d at 1286. Under *Plaut*, Congress cannot constitutionally pass a statute that achieves this same proscribed outcome and revives those portions of the judgment that were final as to the SEC.

At the very least, given *Plaut*, the district court's decision to reopen the 2018 final judgment and expand the scope of relief in the SEC's favor raises "serious constitutional" questions that should be avoided. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005). As the SEC does not dispute, the NDAA does not *require* the reopening of final judgments, unlike the statute in *Plaut*, and does not *require* that it be applied where, as here, the SEC did not appeal or cross-appeal.

9

### D. The NDAA Cannot Be Construed To Retroactively Revoke Mr. Ahmed's Vested Statute-Of-Limitations Defense

The SEC's answer to the stringent presumptions against statutory retroactivity is even more confused. *First*, citing a dictum in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the SEC asserts that it is enough the NDAA applies to "pending" cases, and claims "Mr. Ahmed cites no decision describing such language as insufficient" to give a statute retroactive effect. SEC Br. 38-39. This is wrong. As Mr. Ahmed explained in his opening brief (pp. 30-33), this Court has emphasized the fundamental differences between "retroactively *extend[ing]* the filing period for a still-viable claim" and "retroactively *revok[ing]* a vested statute of limitations defense." *Weingarten v. United States*, 865 F.3d 48, 57-58 (2d Cir. 2017). Although the first is permissible, the "resurrection of previously time-barred claims has an *impermissible* retroactive effect." *In re Enter. Mortg. Acceptance Co., Sec. Litig.*, 391 F.3d at 407 ("[R]esurrecting previously time-barred claim[s]" "increases a defendant's liability for past conduct" and "strip[s] them of a complete affirmative defense").[2]

As a result, this Court instructed in *Enterprise Mortgage*—in yet another controlling decision the SEC ignores—that moribund claims can be revived *only* if there is statutory text "so clear it [can] sustain *only [that] one interpretation*." *Id.*

---

[2] For an illustration of the distinction between "extending" a limitations period and "reviving" time-barred claims, see p. 31 n.11 of Mr. Ahmed's opening brief.

at 405. Under that controlling decision, a statute generically applicable to "pending cases" *cannot* have the "impermissible retroactive effect" of *reviving* claims barred under a prior statutory scheme (as opposed to *extending* limitations periods for still-viable claims). *Id.* at 407. Such a statute does not clearly say Congress undid vested limitations defenses, so it cannot be read to do so. *See Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 615 (8th Cir. 1995) (refusing to construe statute as reviving time-barred claims in part because "it is possible to effectuate [statute's] retroactivity provision . . . by applying it retroactively to cases that have accrued but have not yet been barred").

*Second*, the SEC contends its disgorgement claims were not "time-barred" when the SEC filed this action in 2015, and "it was the Supreme Court's decision in *Kokesh* [*v. SEC*, 137 S. Ct. 1635 (2017),] that changed the status quo by applying [a] 5-year statute of limitations," so Mr. Ahmed did not have any "settled expectation." SEC Br. 38-39. This is another word salad that goes nowhere.

Whatever the law was when the SEC sued Mr. Ahmed in 2015,[3] the Supreme Court instructed in *Kokesh* in 2017 that a five-year limitation governed the SEC's disgorgement claims. "'A judicial construction of a statute is an authoritative statement of what the statute meant *before as well as after* the

---

[3] At the time, there was a circuit split on whether a five-year limitation period applied, and the question was open in this Circuit.

decision[.]'" *Plaut*, 514 U.S. at 216 (quoting *Rivers v. Roadway Express, Inc.*, 511 U. S. 298, 312-313 (1994)).  So, back in 2018, the court applied *Kokesh*'s five-year limitation, and the SEC conceded the point:  "***The SEC does not dispute that the claims for disgorgement*** tied to the transactions which occurred ***over five years before*** this case was filed ***are time-barred***[.]"  SPA-52.

Thus, before the NDAA was enacted, Mr. Ahmed had a "complete affirmative defense"—indeed, one that was conceded by the SEC and even ***adjudicated*** in his favor.  The NDAA could not extinguish this vested defense, recognized in a controlling Supreme Court decision, absent a clear statement by Congress requiring "only" that result.  *In re Enter. Mortg.*, 391 F.3d at 405, 407.  Congress knows how to revive time-barred claims.  *Id.* at 407 (finding unavoidable intent to revive time-barred claims where statute authorized "an action . . . without regard to the expiration of the statute of limitation").  It did not clearly do so here.

### E.    Applying The NDAA To Revive Mr. Ahmed's Time-Barred Claims Would Violate The Ex Post Facto Clause

Even if the SEC were correct on its other arguments, applying the NDAA's new limitation would violate the Ex Post Facto Clause.  The SEC does not dispute the Ex Post Facto Clause applies to civil remedies "imposed for the purposes of punishment"—including "to reprimand the wrongdoer" or "deter others."  *Doe v. Pataki*, 120 F.3d 1263, 1271-73 (2d Cir. 1997).  Nor does it dispute that, under *Kokesh*, SEC disgorgement is a "penalty" for limitations purposes because it is a

12

punishment.  Instead, the SEC urges that, following *Liu*, SEC disgorgement is not "penal" if it does not "exceed the bounds of traditional equitable principles."  SEC Br. 40 (quoting *Liu v. SEC*, 140 S. Ct. 1936, 1946 (2020)).

That is wrong.  *Kokesh* held that SEC disgorgement *always* qualifies as a "penalty" for statute-of-limitations purposes.  137 S. Ct. 1643-45.  SEC disgorgement, the Court explained, is "a consequence for violating . . . public laws"; it is "***inherently*** punitive"; and it "is imposed ***for punitive purposes***."  *Id.* at 1643.  That is so, the Court instructed, because SEC disgorgement is a "sanction imposed for the purposes of ***deterring*** infractions of public laws," which "is ***not*** a legitimate ***nonpunitive*** governmental objective."  *Id.* at 1638 (cleaned up).  Critically, the Court maintained, SEC disgorgement would be punitive even if a court "distribute[d] the funds to the victims."  *Id.* at 1644.  "Because disgorgement orders 'go beyond compensation, are intended to punish, and label defendants wrongdoers' as a consequence for violating public laws, they represent a penalty[.]"  *Id.* at 1645 (citation omitted).

*Liu* did not disturb this holding.  The question in *Liu* was whether disgorgement could be imposed under a remedial statute permitting the SEC to seek "equitable" relief.  The Court held affirmatively, provided the disgorgement does not exceed the defendant's "net profits from wrongdoing."  *Liu*, 140 S. Ct. at 1946.  Following *Liu*, however, *Kokesh*'s core holding remained good law:  SEC

13

disgorgement orders still represented a "punitive" sanction for violations of public laws, so the five-year limitation for penalties still applied to *all* SEC disgorgement claims—even and especially those disgorgement claims that complied with *Liu* (the *only* valid disgorgement claims). So, the Ex Post Facto Clause does curb congressional efforts to retroactively augment the limitation period.

Indeed, as previously explained, Congress's decision in the NDAA to single out scienter-based wrongdoing for an extended limitation period further demonstrates Congress's punitive purposes. The SEC's effort to explain away that feature of the NDAA—"scienter might, for example, serve as a proxy for fraud violations," SEC Br. 40-41—is question-begging and not at all responsive.

Of course, if there were any question on these points, the avoidance canon would again require rejecting the SEC's position. *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985) (declining retroactively to treble damages in civil trademark case given "potential *ex post facto* problem"). On this point, the SEC once more speaks volumes in its silence—it neither argues the canon does not apply, nor suggests a limiting construction is unavailable.

## II.    The Remedial Order Should Be Vacated

### A.    For The Company C Transactions, There Were No Unlawful Profits Caused By A Securities-Law Violation

The district court improperly froze and then disgorged amounts for profits from two sales of Company C equity to Oak, despite those profits being caused by market increases.  The SEC's effort to defend this result flouts *Liu*.

**1.**  As explained in Mr. Ahmed's opening brief (pp. 38-39), the SEC *cannot* "seek[] an equitable remedy in excess of a defendant's *net* profits *from wrongdoing*."  *Liu*, 140 S. Ct. at 1946.  This means a wrongdoer "should not be punished by pay[ing] more than a fair compensation to the person wronged," and also that disgorgement must be *causally connected* to the securities-law violation. *Id.* at 1943, 1946 (cleaned up).

The SEC cannot show these prescriptions were satisfied.  The court held that, on two occasions where Oak bought Company C equity, Mr. Ahmed violated the securities laws by failing to disclose his interests in Company C.  Mr. Ahmed's profits on these transactions resulted from a price increase in Company C equity (between the time the Company C equity was acquired by Mr. Ahmed or I-Cubed and sold by him), and the SEC does not dispute that this price increase was caused *solely* by market forces—*not at all* by any wrongdoing.  With respect to the C1 Transaction, the SEC does not (and cannot) dispute that the Company C equity was bought and sold *at market price*; this means the entirety of Mr. Ahmed's "net

15

profits" was caused by *lawful* market increases.  The same is true with respect to the C2 Transaction, where the court *declined* to make *any finding* as to the market value of the equity, either when I-Cubed purchased it or sold it to Oak.  This means there was no showing of *any* profits *caused* by a securities-law violation.

**2.**  Seeking nonetheless to justify the freeze and disgorgement, the SEC tries to rewrite the decision below, stating: "As the district court observed, he acquired the relevant Company C shares only by subterfuge designed to conceal that he was personally investing in Company C shortly after the Oak fund already had made its own investment"—in other words, "Mr. Ahmed's ***initial purchase*** itself breached his fiduciary duty," so his profits flow from that "initial" fiduciary-duty breach. SEC Br. 28-29.  The SEC's position is wrong on the facts and the law.

To begin, the court ***never*** identified a fiduciary-duty breach—let alone a securities-law violation—in "***Mr. Ahmed's initial purchase***" of Company C equity.  *Id.*  It ***exclusively*** identified a securities-law violation months or years ***after*** "Mr. Ahmed's initial purchase," when Mr. Ahmed failed to disclose his indirect interest in Company C to Oak on the two occasions ***Oak acquired*** Company C equity.  SPA-62 ("it is evident that defendant did not disclose his interest in I-Cubed to Oak or Oak Fund XIII ***when Oak Fund XIII bought Company C shares***").  The court gave the same explanation when it ordered disgorgement. SPA-103-04 (explaining, with respect to the C1 and C2 Transactions, that the

16

violations occurred when "Mr. Ahmed concealed the fact that he was on both sides of the deal" when Oak bought equity). These findings tracked the SEC's liability claims. Dkt. 623 at 58 (summary-judgment briefing) ("Defendant's conduct in connection with ***Oak Fund XIII's purchase of Company C shares***" violated securities laws).[4]

Regardless, the SEC's argument fails on the law. Citing a treatise, the SEC says a "trustee" may not retain "'any pecuniary gains from his fiduciary position.'" SEC Br. 29 (citation omitted). Under *Liu*, however, the SEC may seek disgorgement only of ***unlawful*** profits ***caused by*** a violation, regardless of whether the securities-law violator is a fiduciary. 140 S. Ct. at 1946. To repeat, there was no showing or finding below—as is legally required—that any profits related to Oak's purchase of Company C equity (the sale price minus the purchase price) were causally connected to a *securities-law violation*. There could not be, as there is no connection whatsoever between (1) either the purchase price or even the sales price, and (2) the finding that "Mr. Ahmed concealed the fact that he was on both sides of the deal" or otherwise hid his interest in Company C. SPA-103–04. Indeed, even today, the SEC does not dispute that all purchases and sales of

---

[4] *See also id.* at 59 (arguing that Mr. Ahmed's "***sale of his own Company C shares to Oak Fund XIII*** violated the Adviser's Act[]"); *id.* at 60 (arguing that violation occurred when Mr. Ahmed "illicitly obtained funds ***by selling those shares back to Company C in connection with Oak Fund XIII's investment into Company C, and selling other Company C shares directly to Oak Fund XIII***").

17

Company C equity were *at market prices*. And, given *Liu*, simply showing a securities-law violation is insufficient to permit a disgorgement remedy; the SEC must affirmatively show that the violation caused *unlawful* profits.

### B. The Disgorgement Order Should Be Reduced To Account For $35 Million Oak Already Obtained From Mr. Ahmed

Next, both the district court's freeze and disgorgement orders erroneously declined to give Mr. Ahmed a credit for roughly $35 million in forfeited assets Oak seized. The SEC's legal and factual counterarguments are specious—and it has no answer to the dozen cases Mr. Ahmed cited precluding that overcharge.

**1.** Again, the SEC does not dispute the core points: Mr. Ahmed held roughly $35 million at Oak, consisting of carried interests in Oak funds, cash contributed by him to capital accounts, and K-1 distributions. These assets were lawfully earned by Mr. Ahmed, and Oak seized all of them unilaterally for Mr. Ahmed's "disabling conduct"—namely, the same alleged misconduct at issue here. Given this, the SEC cannot seriously dispute that, by failing to award an offset, the disgorgement order imposed an overcharge and will result in a massive windfall for Oak. Indeed, the result of the 2018 disgorgement order is that Mr. Ahmed was directed to pay ***more than $75 million*** to cover net unlawful profits of ***$42 million***.

**2.** The SEC, quoting the court below, argues "no double recovery will result 'because these forfeited interests are not ill-gotten gains . . . but rather were sacrificed by [Mr. Ahmed] upon his termination for "Disabling Conduct."'" SEC

18

Br. 30 (quoting SPA-121). But the logic of this argument is perverse: The assets' *lawful* source—i.e., that they "are not ill-gotten gains"—proves the overcharge imposed on Mr. Ahmed. It is backwards to suggest that Mr. Ahmed could benefit from an offset only if the seized assets were ***unlawfully*** earned. Here, the court found Mr. Ahmed illegally obtained $42 million from Oak, and acknowledged that Oak already seized $35 million of his lawfully-earned cash and assets in response to his alleged misconduct. Plainly, an order requiring Mr. Ahmed to pay the full $42 million ***on top of*** the $35 million Oak already seized violates *Liu*, and does not put him in the same position as if no violation had occurred.

No doubt realizing the problem, the SEC tries to rewrite the decision below: to put the court's reasoning "in other words," the SEC announces, "the carried interest was entirely contingent and never realized." SEC Br. 30. But the SEC's fanciful rewrite has no bearing on the court's actual reasoning. The court declined an offset because ***Oak seized lawfully-earned assets from Mr. Ahmed*** to recover losses it allegedly suffered from ***the very same misconduct*** alleged here. Indeed, the court held that Mr. Ahmed "forfeited" his interests solely "because [he] was terminated for 'Disabling Conduct,'" and its decision makes clear that, had it been otherwise, he would undoubtedly have had a right to the funds. SPA-119-120 (citation omitted). This is the very converse of the supposed finding that the SEC concocts—i.e., that Mr. Ahmed never had a right to these assets to begin with.

19

**3.** Nor does the SEC have a cogent response to the string of cases Mr. Ahmed cited at pages 46-50 of his brief. The SEC claims most cases involved offsets "keyed to monies actually repaid in restitution . . . or settlement with victims." SEC Br. 31. So what? As the SEC itself conceded in *SEC v. Palmisano*, the point is that a "defendant ***is only required to give back the proceeds of his securities fraud once***." 135 F.3d 860, 863-64 (2d Cir. 1998) (quoting from the SEC's brief and holding that the defendant's prior payments must "offset his disgorgement obligation"). None of these cases suggests a defendant's repayment doesn't count because the victim unilaterally seized the funds, rather than obtaining them by judgment or settlement. *E.g.*, *SEC v. Levin*, 849 F.3d 995, 1007 (11th Cir. 2017) (holding that if an investor "does ultimately recover" losses directly from the defendant, the defendant "could petition the court for a reduction in the disgorgement award because the recovery would constitute a partial return of [the defendant's] ill-gotten gains"). And it would make no sense whatever to create such a distinction. The point of the caselaw is that if the proceeds of a defendant's securities fraud are $X, he must (and must only) disgorge $X. Anything else is an overcharge and leads to double recovery.

Meanwhile, the one case the SEC does discuss highlights the court's errors. In *SEC v. Penn*, the court held "any disgorgement award ***must be offset*** by … ***the value of [defendant's] forfeited interest in the Fund***"—i.e., exactly what Mr.

20

Ahmed argues. 2017 WL 5515855, at * 3 (S.D.N.Y. Aug. 22, 2017). Indeed, in *Penn*, the SEC did not even dispute that defendant's "carried interest in the Fund ha[d] some notional value that could offset his disgorgement obligation." *Id.* at *4. The SEC disputed the defendant's *valuation*, and so there was an "evidentiary hearing" on valuation, *id.*, but that proves Mr. Ahmed's point.

The SEC strains to avoid the clear import of *Penn* by arguing that, after the *Penn* court scheduled a valuation hearing, it denied the offset. *SEC v. Penn*, 2018 WL 437844, at *5 (S.D.N.Y. Sept. 14, 2018). True enough: the court did deny the offset—because the defendant's expert was unreliable, and the defendant *failed to show up* at the hearing. *Id.* at *2. But that has nothing to do with this appeal. Below, the only valuation offered was $35 million, and the court made ***no valuation finding***; it denied relief as a matter of law on the erroneous ground the seized assets could ***never*** give rise to an offset—no matter their value—because they were "not ill-gotten gains." SPA-121. That was reversable legal error.

### C. On Remand, The District Court Should Allow A Credit For Any Further Recoveries By Oak

As discussed in Mr. Ahmed's brief (pp. 50-51), Oak obtained an arbitration award of $57 million against Mr. Ahmed—***on top of*** the $35 million in seized assets and $42 million in disgorgement. The SEC appears to agree that, on remand, and to the extent any disgorgement order remains, the court must allow

21

Mr. Ahmed to offset any money paid in satisfaction of the award. SEC Br. 32. (At present, the award is being challenged in the Supreme Court of Connecticut.)

### D. The Penalty Should Be Vacated

If this Court reverses the award of disgorgement for Company C, then it should also vacate the civil penalty for potential reduction. The SEC asserts this relief is inappropriate under *SEC v. de Maison*, 2021 WL 5936385, at *2-4 (2d Cir. Dec. 16, 2021) (summary order). But, unlike in that non-precedential ruling, the court below *expressly* tied the civil penalty to the disgorgement amount. *See* SPA-109. So, if the disgorgement amount is reduced, then Mr. Ahmed should be permitted to request a reduction in the penalty.

## III. The Court Should Vacate The Summary-Judgment Ruling

### A. The SEC Has No Response To Mr. Ahmed's Claim That He Was Deprived Of Notice And A Meaningful Opportunity To Respond

As Mr. Ahmed explained, the entry of summary judgment as to liability in this case contravened summary-judgment procedures and the Due Process Clause. Br. 54-61. Mr. Ahmed devoted six full pages to this argument, citing Supreme Court caselaw for the foundational principles of adversary proceedings in the United States, as well as Rule 56's requirements. *Id.* Remarkably, the SEC does not join issue. That is because there is no justification for what occurred.

The district court unquestionably deprived Mr. Ahmed of the basic requirements of notice of the evidence against him and the right to be heard and

22

respond.  *First*, the court prohibited Mr. Ahmed (who was *pro se*) from viewing more than 90% of the SEC's evidence.  This included numerous documents, 258 consecutive pages of the deposition transcript of the SEC's most important witness, and even, amazingly, substantial portions of the SEC's statement of (purportedly) ***undisputed*** facts.  This does not even come close to comporting with the foundational requirements of our adversarial legal system.  *Second*, the court denied *every single one of* Mr. Ahmed's discovery demands, and precluded Mr. Ahmed from attending the deposition of Oak's corporate representative—the sole victim in this case—on the basis of supposed confidentiality concerns.

As a result, at summary judgment, Mr. Ahmed had no ability to address the *prima facie* sufficiency of the SEC's evidence, no opportunity to develop a discovery record in his favor, and no chance to establish a genuine dispute of material fact.  If due process demands anything, it at least "demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other."  *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004).  Rule 56 requires more, too.  *See* Fed. R. Civ. P. 56(c)(1) (to establish genuine dispute, non-moving party "must" either "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the

absence . . . of a genuine dispute"). Without attempting to exaggerate, the process below resembled the Star Chamber far more than an American courtroom.

The SEC does not dispute what transpired below. But it claims, in a single sentence without elaboration, that Rule 56 was satisfied because the court still permitted Mr. Ahmed to "make filings" and "participate in hearings." SEC Br. 23. Nonsense. Mr. Ahmed's filings literally stated, more than 65 times, that he could not respond to the substance of the SEC's summary-judgment filings because they were "redacted" and "the SEC has not shared [its] evidence." *E.g.*, Dkt. 666 at 5, 8-16, 20, 22-25, 27, 30-31, 35, 37-44, 46-48, 50. The SEC cannot defend the method of adjudication employed below on the basis that Mr. Ahmed was allowed to file papers objecting to it on the ground that he was excluded.

Imagine the case had gone to trial, and every time a witness testified or the SEC adduced an exhibit, Mr. Ahmed, who was unrepresented, was required to leave the courtroom, thus depriving him of all ability to oppose the SEC's case or put on his own. That is no different from what happened here. It is abhorrent to our system of justice. And whether the discovery orders that collectively resulted in this *ex parte* procedure were independently legitimate (they were not), the entry of summary judgment in such a posture cannot stand.

Without engaging with any of Mr. Ahmed's arguments, the SEC casually asserts "no harm, no foul." According to the SEC, there was no prejudice because

24

*the Relief Defendants* had counsel and *they* were able to access discovery and respond. SEC Br. 26. This is, indeed, dangerous stuff—and would be laughable, were Mr. Ahmed's deprivation not so severe. Mr. Ahmed is the only "defendant" accused of wrongdoing, and the only party with knowledge of his conduct. Exclusion from his own civil prosecution is quite obviously prejudicial. There is no the-other-parties-had-due-process exception to the Due Process Clause.

### B. The District Court's Discrete Orders Restricting Discovery And Denying Funds For Counsel Were Unnecessary And Improper

Although the SEC has no answer to Mr. Ahmed's argument that the entry of summary judgment violated Rule 56 and due process, the SEC seeks to defend certain discovery rulings that, collectively, deprived Mr. Ahmed of the ability to see the SEC's evidence or adduce a defense. That effort also fails.

*First*, the SEC argues the court's discovery limitations were "justified . . . under the fugitive disentitlement doctrine." SEC Br. 19. But that doctrine applies only when the defendant is a fugitive from justice in "a ***related*** criminal prosecution." *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 279, 279 (2d Cir. 1997) (citing *Degen v. United States*, 517 U.S. 820, 823 (1996)). Here, the court below acknowledged that Mr. Ahmed's criminal prosecution is "***unrelated*** to this action." SPA-29. As it habitually does in this appeal when it has no response, the SEC ignores Mr. Ahmed's point, and provides no basis to justify applying the disentitlement doctrine here.

25

*Second*, even if the doctrine did apply, and to the extent the court below had legitimate confidentiality concerns,[5] it held numerous less problematic tools to enforce compliance, including monetary and non-monetary sanctions, such as evidentiary and even case-dispositive penalties. That is indeed the core holding of *Degen*. 517 U.S. at 827. The SEC again has no cogent answer, and ignores *Degen*. It does not address the availability of monetary sanctions, and it offers a perverse defense of the court's refusal to consider non-monetary sanctions. In the SEC's view, "the district court was understandably reluctant to rely on non-monetary sanctions . . . given the court's prior determination in its preliminary injunction ruling that the Commission had shown a likelihood of prevailing on the merits." SEC Br. 21. In other words, the SEC apparently posits Mr. Ahmed should not have been allowed to see confidential documents because they would prove his liability. That is both outrageous and indefensible. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 551 (1950) (Jackson, J., dissenting) ("The plea that evidence of guilt must be secret is abhorrent to free men.").

*Third*, the SEC contends there was nothing "unfair" about denying Mr. Ahmed access to Oak's deposition because a magistrate judge "reviewed the

---

[5] Strikingly, the court barred Mr. Ahmed from seeing entire emails that *he himself had written or received* while employed by Oak—all in the name of Oak's interest in "confidentiality." *E.g.*, Dkt. 628-17 (placeholder; document filed under seal at Dkt. 629-5).

26

transcript *in camera* and concluded that the vast majority of the redactions were entirely justified," and Mr. Ahmed never objected in district court.  SEC Br. 22-23. The SEC misses the point.  Mr. Ahmed does not contest the redactions.  He contests the procedures depriving Mr. Ahmed—a defendant in an enforcement action brought by the SEC and resulting in a judgment for roughly $100 million— the right to review confidential evidence or to participate in discovery.  The fact that a magistrate judge upheld redactions does not remotely justify excluding *Mr. Ahmed* from the deposition room or the discovery process.

Fourth, the SEC claims the court reasonably denied Mr. Ahmed's motion for funds to pay counsel because no "excess frozen assets" were available.  SEC Br. 25-26.  But, as Mr. Ahmed explained in Parts I and II, above, there *were* excess frozen assets, and the purpose of an asset freeze is only to "[en]sure[] that any funds that may be come due can be collected"—not to deprive a party of access to his own money to pay counsel.  *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990).  Regardless, this again misses the point.  It is one thing to deny a defendant access to counsel or, alternatively, to deny a counseled defendant direct access to evidence.  But it is an entirely different thing to impose ***both*** restrictions ***in combination***, forcing a party to proceed without notice and the ability to respond. That ***combination*** is what occurred here, and that ***combination*** was legal error.

**IV.    The District Court's Award Of Interests And Gains Was Error**

In his opening brief, Mr. Ahmed joined and incorporated by reference the arguments of the Relief Defendants respecting the district court's calculation of interests and gains.  Mr. Ahmed hereby joins and incorporates by reference the arguments Relief Defendants advance on reply.

Among other things, and as Relief Defendants explain, the pre-freeze interest rate should be set below the IRS rate, which is punitive.  *See N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 131 (2d Cir. 2001) (pre-judgment interest should be "interest on short-term, risk-free obligations" (citation omitted)).  Indeed, "[t]he IRS rate is intentionally punitive," so it cannot survive *Liu*.  *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 163 (S.D.N.Y. 2012).

Next, it was error to award actual gains on frozen assets after the freeze and before judgment.  *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972) (legal error to order defendant to "transfer . . . all the profits and income earned on . . . proceeds" of transaction).  Instead, the court should have awarded interest at a non-punitive fixed rate.

And following the 2018 judgment, the interest rate should have been that set by 28 U.S.C. § 1961.  *See Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche*

*Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989) (that rate "is mandatory"; no "judicial

discretion in its application" statutorily permitted).

## **CONCLUSION**

The Court should reverse and remand with the instructions set forth at

pages 66-68 of Mr. Ahmed's opening brief.


Dated:  March 16, 2022              Respectfully Submitted,
       New York, NY

                               */s/* Vincent Levy
                               Vincent Levy
                               Gregory Dubinsky
                               Andrew C. Indorf
                               HOLWELL SHUSTER & GOLDBERG LLP
                               425 Lexington Avenue, 14th Floor
                               New York, NY 10017
                               (646) 837-5150
                               vlevy@hsgllp.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) and Local Rule 32.1(a)(4)(B) because this brief contains 6,999 words,

excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally-spaced typeface using Microsoft Word

2013, Times New Roman 14-point.

Dated:  March 16, 2022        By:   /s/ Vincent Levy
                                         Vincent Levy

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2022, I caused the foregoing to be electronically filed with the Clerk of Court for the United States Court of Appeals for the Second Circuit via the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  March 16, 2022        By:   /s/ Vincent Levy
                                     Vincent Levy