Nos. 21-1686(L) & 21-1712(CON)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff – Appellee,

v.

Iftikar A. AHMED, Shalini Ahmed,
I.I. 1, a minor child, by and through his next friends Iftikar and
Shalini Ahmed, his parents,
I.I. 2, a minor child, by and through his next friends Iftikar and
Shalini Ahmed, his parents,
I.I. 3, a minor child, by and through his next friends Iftikar and
Shalini Ahmed, his parents,
I-Cubed Domains, LLC, Shalini Ahmed 2014 Grantor Retained Annuity
Trust, DIYA Holdings, LLC, DIYA Real Holdings, LLC,

Defendants – Appellants,

v.

JED HORWITT,

Receiver – Appellee.

**OPPOSITION OF THE SECURITIES AND EXCHANGE
COMMISSION TO RELIEF DEFENDANT SHALINI AHMED'S
MOTION TO STAY THE MANDATE**

The Court should deny Relief Defendant Shalini Ahmed's motion to stay the mandate. Ms. Ahmed fails to show that any forthcoming petition for certiorari "would present a substantial question and that there is good cause for a stay." *United States v. Silver*, 954 F.3d 455, 457 (2d Cir. 2020) (quoting Fed. R. App. P. 41(d)).

## BACKGROUND

### A. Procedural History

This SEC enforcement action arises from the fraudulent theft by former investment advisor—and current "fugitive from justice"—Iftikar Ahmed of roughly $65 million. *See SEC v. Ahmed*, 72 F.4th 379, 389–93 (2d Cir. 2023). The district court granted a preliminary injunction freezing the assets of both defendant Ahmed and a group of Relief Defendants including his wife, Shalini Ahmed, their three children, and related family entities. The Court affirmed that injunction on appeal. *SEC v. I-Cubed Domains, LLC*, 664 F. App'x 53, 55 (2d Cir. 2016) (summary order). After initial entry of final judgment and an intervening remand, this Court partially affirmed and partially vacated the district court's redetermined final judgment order. *Ahmed*, 72 F.4th at 410.

1

The district court found that approximately $54.6 million worth of assets purportedly owned by the Relief Defendants were available to satisfy the judgment against Iftikar Ahmed, in part because many of those assets were held by the Relief Defendants as defendant Ahmed's nominees. *See* D.955 at 31 (referencing schedule of assets appearing at D.888-1).[1] Under the nominee doctrine, the assets of someone who "holds bare legal title to an asset but is not its true equitable owner … may be disgorged to satisfy a judgment against a third party deemed to be the asset's true equitable owner." *Ahmed*, 72 F.4th at 408.

On appeal, this Court held that the district court erred by not conducting an item-by-item assessment of which assets held by Relief Defendants were available to satisfy the judgment under the nominee doctrine. It therefore remanded for additional fact-finding. *See id.* at 409–10. At the same time, however, the Court concluded that the district court's fact-finding was sufficient as to three assets. "Specifically, the district court's analysis regarding the Iftikar A. Ahmed Family Trust, MetLife Policy (which was owned by the Iftikar A.

---

[1] "D." refers to docket entries in proceeding below: *SEC v. Ahmed*, No. 3:15-cv-675 (D. Conn.) (Arterton, J., succeeded by Meyer, J., as of September 2023).

Ahmed Family Trust), and Fidelity x7540 account was sufficient because the district court weighed the SEC's evidence and considered the Relief Defendants' counter-evidence as to each asset and made findings on the record." *Id.* at 409.

The issues raised by Ms. Ahmed's stay motion are quite narrow. She argues that the Court erred in its clear-error review of the district court's factual findings as to these three assets. She also claims that the fact-finding procedure used by the district court was so barebones as to constitute a violation of her due-process rights. *See* Mot. 7. Neither claim has merit, particularly under the demanding stay standard embodied in Federal Rule of Appellate Procedure 41(d).

## B.  Evidence Related to the Disputed Assets

Because the Court's opinion did not recount the district court's factual findings regarding the three assets discussed in Ms. Ahmed's motion, it may be useful to summarize them.

First, as to the Iftikar A. Ahmed Family Trust, the Commission introduced evidence showing that "the Family Trust—which holds a bank account and the MetLife insurance policy—was funded with Defendant's money, including approximately" $3.577 million from two

3

separate frauds.  D.921 at 7–8 (citing D.921-1).  "Moreover, despite allegedly having no interest in or control over the assets, Defendant unilaterally directed the movement of the Family Trust's money," at one point referring to the Trust as being among "my accounts."  D.921 at 8 (quoting D.888-28 at 3).  The Commission also proved that Ahmed controlled the Trust account, introducing evidence showing that Ahmed represented that it was his, hired and fired the account manager, and directed the execution of paperwork to effectuate an account transfer.  D.888 at 35–36.  Reviewing this evidence, the district found both that "the Family Trust was funded and created using Defendant's money" and "that Defendant controls the Family Trust."  D.995 at 24 n.21.

The district court's factual findings as to the Trust also resolve the status of the MetLife policy.  The Trust is the named beneficiary of the policy, and because the district court found that the Trust was held by Relief Defendants as Ahmed's nominees, it reasonably concluded that the policy should be included in the liquidation estate as well.  *See* D.2395 at 25–26 (citing D.2065 at 17 and D.2147 at 21).

That leaves Ms. Ahmed's Fidelity brokerage account, listed in the Commission's asset schedule as Fidelity x7540 and containing (as of

May 2018) approximately $13.2 million.  D.888-1 at 3.  During her deposition "Ms. Ahmed did not recall receiving the $18 million check (the proceeds of Defendant's Company B fraud) that funded this account, and specifically testified the account was opened only so she could access assets 'should anything happen to [Defendant].'"  D.888 at 33.  As the Commission argued, this testimony rendered "facially incredible" the claim that Ms. Ahmed controlled the account, *id.* at 31, and the district quoted this deposition testimony when discussing the account in its remedies opinion, *see* D.955 at 23 n.19.

Importantly, Ms. Ahmed did not introduce significant evidence in district court to rebut the Commission's assertion that the Relief Defendants held the three foregoing assets as Ahmed's nominees.  As the district court underscored, the Commission had "put forth evidence that the seized assets belong to Mr. Ahmed and were placed in the names of Relief Defendants as nominees only, in an effort to protect and hide the fraudulently obtained assets.  D.995 at 20.  By contrast:

> Neither Relief Defendants' Asset List, nor any other submissions to the Court, explain how Relief Defendants controlled the assets or how they were acquired.  Nor do they provide any argument that goods or services were provided in exchange for the assets, or any expert analysis demonstrating the SEC's nominee allegations are inaccurate.

5

*Id.* at 4.  Accordingly, there is little to no evidence in the record contradicting the Commission's proof regarding application of the nominee theory to the Family Trust, the MetLife policy, and the Fidelity account.

## LEGAL STANDARD

The standard for granting a stay pending the filing of a petition for a writ of certiorari is "stringent and extraordinary." *Silver*, 954 F.3d at 457.  The movant must show that her petition "would present a substantial question," Fed. R. App. P. 41(d)(1), which requires "a reasonable probability that four justices will vote to grant certiorari" and "a fair prospect that five justices will vote to reverse the Panel's judgment." *Silver*, 954 F.3d at 458–60 (internal quotation marks omitted).

The movant must also show "that there is good cause for a stay," Fed. R. App. P. 41(d)(1), which raises the issue of whether irreparable harm will result absent a stay, *see Silver*, 954 F.3d at 460.  The public interest is also relevant.  *See Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009) (per curiam), cited in *Silver*, 954 F.3d at 460.  Even if movant makes the required "exceptional" showing, the

Court "need not grant" the motion, as its decision "is a matter of discretion." *Silver*, 954 F.3d at 458 (citing *Khulumani v. Barclay Nat'l Bank Ltd.*, 509 F.3d 148, 152 (2d Cir. 2007)).

## ARGUMENT

### I.   Ms. Ahmed fails to demonstrate that this case presents a substantial question meriting certiorari.

"To start, the standard for presenting a 'substantial question'" that warrants a stay of the mandate "is high," *Silver*, 954 F.3d at 458, and Ms. Ahmed does not satisfy it.  Ms. Ahmed "cannot show that the Opinion 'conflict[s] with the decision of another United States court of appeals on the same important matter," or that the Court's "Opinion … 'has so far departed from the accepted and usual course of judicial proceedings ... as to call for an exercise of [the Supreme] Court's supervisory power.'"  *Id.* (quoting U.S. Sup. Ct. R. 10(a)).  She also fails to demonstrate that the Court's opinion "conflicts with relevant decisions" of the Supreme Court.  U.S. Sup. Ct. R. 10(c).

To the extent that Ms. Ahmed argues that the district court simply erred in its fact-finding as to application of the nominee theory to the Family Trust, the MetLife policy, and the Fidelity account, she faces an insuperable burden.  An appellate court will only reject a

7

district court's fact-findings under the clear-error doctrine when it "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Given that Ms. Ahmed did not introduce any meaningful evidence to counter the Commission's proof of the defendant's control over the contested assets, it is difficult to imagine how there could be clear error on this record.

Moreover, once a case moves to the certiorari stage, Ms. Ahmed's task becomes harder still. The Supreme court has explained that it "will not overturn [a] finding unless it has no support in the record" and that it has "been reluctant to disturb findings of fact in which two courts below have concurred." *United States v. Doe*, 465 U.S. 605, 614 (1984); *see also Easley v. Cromartie*, 532 U.S. 234, 242–43 (2001) ("Where an intermediate court reviews, and affirms, a trial court's factual findings, this Court will not 'lightly overturn' the concurrent findings of the two lower courts." (quoting *Neil v. Biggers*, 409 U.S. 188, 193, n.3 (1972))). Given that the record here contains affirmative evidence supporting the district court's factual findings and little

8

evidence on the other side, there is no reason to conclude that this case would overcome the Supreme Court's skepticism of granting certiorari to address fact-bound issues.

Ms. Ahmed's attempt to identify a circuit split fares no better. She purports to identify irreconcilable tension in how circuit courts use multi-factor tests to conduct nominee analysis (Mot. 11–12), but this Court's opinion is well-grounded in existing doctrine. It cites the same equity treatises recently relied upon by the Supreme Court in addressing the scope of a district court's equity powers in Commission enforcement actions. *Compare Liu v. SEC*, 140 S. Ct. 1936, 1942–43 (2020) (citing 1 D. DOBBS, LAW OF REMEDIES § 4.3(5) (1993), and 1 J. POMEROY, EQUITY JURISPRUDENCE § 101 (4th ed. 1918)), *with Ahmed*, 72 F.4th at 408 (citing the same treatises). It also grounds its approach to nominee doctrine in Supreme Court precedent going back nearly 150 years. *See Ahmed*, 72 F.4th at 408–09 (citing *Nat'l Bank v. Case*, 99 U.S. 628, 632 (1878), and *Higgins v. Smith*, 308 U.S. 473, 475 (1940)). And as one of Ms. Ahmed's cited cases makes clear, the existence of a nominee relationship turns not on any particular test but "on the totality of the circumstances." *Berkshire Bank v. Town of*

9

*Ludlow*, 708 F.3d 249, 253 (1st Cir. 2013) (cited at Mot. 11). Here, the totality of the record, compiled after years of litigation, established that the assets now at issue were "equitably owned by the primary defendant." *Ahmed*, 72 F.4th at 409.

Ms. Ahmed's attempt to reframe her argument as a due-process claim (Mot. 9–14) is equally unavailing. In the first place, neither of Relief Defendants' briefs before this Court (ECF Nos. 95 & 134) raised a standalone due-process claim, and so this Court never addressed the arguments that Ms. Ahmed now raises in her motion. The Supreme Court has explained that its "traditional rule … precludes a grant of certiorari … when the question presented was not pressed or passed upon below." *United States v. Williams*, 504 U.S. 36, 41 (1992) (internal quotation marks omitted). The Supreme Court is thus unlikely to grant certiorari to address a forfeited argument.

In any event, Ms. Ahmed's due process argument is clearly wrong on the merits. The gravamen of her complaint is that the district court should have held a hearing, but she nowhere explains what additional evidence she could have introduced at such a hearing to contradict the Commission's proof regarding the three contested assets. It is of course

10

true "that individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)).  But Ms. Ahmed has been heard. Indeed, "in her interrogatory responses, Ms. Ahmed claimed only to own a few assets," not including the three addressed by her motion, and in her deposition testimony she "was unable to remember receiving more than $25 million in checks from Defendant" or to remember the circumstances surrounding the funding of the Fidelity account.  D.995 at 21 & nn.13, 15; *id.* at 23 & n.19.  During nearly a decade of litigation in a case with well over 2,000 docket entries, Ms. Ahmed has fully availed herself of judicial process in both district court and before this Court. *See, e.g.*, ECF No. 178 at 4–7 (detailing earlier attempts to stay liquidation).

What's more, before the parties submitted briefing on the Commission's motion for remedies, the district court ordered the Relief Defendants to "provide a list identifying all assets they claim belong to them, and the reasons why they claim such ownership."  D.842 at 3. The Relief Defendants submitted such a list, D.862-1, although without

explaining the basis for their ownership claims. Then, after the Commission offered evidence regarding the Relief Defendants' nominee status (D.888 and attachments), the Relief Defendants filed a response in which they discussed the Family Trust (D.905 at 5–6), the MetLife policy (*id.* at 5), and the Fidelity Account (*id.* at 2, 12). In short, Ms. Ahmed had an opportunity to be heard, and was heard, as to the very assets at issue her in stay motion.

To the extent Ms. Ahmed claims that Relief Defendants have a constitutional entitlement to an in-person hearing regarding their status as nominees, she is incorrect. Federal Rule of Civil Procedure 78(b) states that a district court "may provide for submitting and determining motions on briefs, without oral hearings," and "it has been held that a hearing on motions filed in a district court is not required by considerations of due process." *U. S. Fid. & Guar. Co. v. Lawrenson*, 334 F.2d 464, 467 (4th Cir. 1964) (collecting cases). Moreover, both the amended and second amended complaints (D.33 and D.208) named Ms. Ahmed as a party, and a party in a case, even when named "only as a relief defendant," generally has a "full opportunity to

12

litigate her rights." *SEC v. Cavanagh*, 155 F.3d 129, 136–37 (2d Cir. 1998).[2]

In sum, Ms. Ahmed's forfeited due-process arguments do not present a substantial question meriting certiorari.

## II. Ms. Ahmed fails to demonstrate good cause for staying the mandate.

Ms. Ahmed's inability to identify a substantial question that merits Supreme Court review is reason alone to deny a stay of the mandate. But there also is no good cause for such a stay. "'A stay is not a matter of right, even if irreparable injury might otherwise result.'" *Ind. State Police Pension Tr.*, 556 U.S. at 961 (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). "It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Id.*

---

[2] Indeed, courts "have recognized a truncated form of process vis-à-vis 'a non-party depository as a nominal defendant to effect full relief in the marshaling of assets that are the fruit of the underlying fraud.'" *SEC v. Ross*, 504 F.3d 1130, 1141 (9th Cir. 2007) (quoting *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998)). But here, as the lengthy history of this litigation demonstrates, the proceedings have not been "truncated" at all.

13

(quoting *Nken*, 556 U.S. 418 at 433–34).  Ms. Ahmed has not met this burden.

The public interest here supports proceeding with liquidation as to the three contested assets.  Liquidation is designed to secure the Commission's final judgment against Ahmed, such that any action by this Court to stay liquidation would imperil the Commission's ability to collect on its judgment and would undermine the public interest in compensating his fraud victims at the conclusion of this litigation. Here, "assets that have been adjudicated to be owned by Defendant are valued at approximately $59 million, which is substantially less than the approximately $95 million in disgorgement, prejudgment interest, and civil penalties affirmed by" this Court.  D.2573 at 9.  As the district court has previously explained, the value of the Receivership Estate has fluctuated by tens of millions of dollars during these proceedings, and "the risk of a decrease in value should not be borne by the victims of Defendant's fraudulent scheme."  D.1997 at 12–13.

In addition, the public has an interest in fraudsters not being seen to profit, directly or indirectly, from their misconduct.  Ms. Ahmed claims that any receiver action targeting the Family Trust will

14

ultimately harm the Trust's beneficiaries, Ahmed's children. Mot. 20–
21. But that argument ignores evidence tending to show both that
Ahmed controls the trust and that he funded the Trust with ill-gotten
gains. *See supra* 3–4.

Ms. Ahmed also contends that she and her children will face
irreparable harm from liquidation and potential distribution of assets
that may not be recoupable should the Supreme Court grant certiorari
and rule in her favor. Mot. 20. But Ms. Ahmed does not substantiate
those fears. "Over the course of a decade, Ahmed stole over $65 million
from Oak [Management Corporation] and ten portfolio companies."
*Ahmed*, 72 F.4th at 390. There is thus a discrete number of victims
here, and the case is unlike instances in which there are "payments by
the government to a large number of individuals who were unlikely to
be able to repay any erroneous payments if the judgment were
reversed." *McBride v. CSX Transp., Inc.*, 611 F.3d 316, 318 (7th Cir.
2010) (denying motion to stay the mandate).

While the Commission previously recognized that the liquidation
value of the MetLife policy is less than its payout value (ECF No. 178
at 18 n.5), at this late stage any concerns over the consequences of

15

liquidation are now outweighed by this Court's affirmance of the district court's nominee holdings as to the Family Trust, the MetLife policy, and the Fidelity account. In the absence of any persuasive merits argument tending to show that the district court erred in concluding that the Relief Defendants held these assets as nominees—and Ms. Ahmed has offered none—there is no reason for a further stay.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to stay the mandate.

Respectfully submitted,

/s/ Daniel T. Young

DANIEL T. YOUNG
Appellate Counsel

STEPHEN G. YODER
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-3078 (Young)
youngda@sec.gov

Dated: October 27, 2023

16

# CERTIFICATE OF COMPLIANCE

I hereby certify as follows:

1.      This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,140 words as counted using Microsoft Office Word.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-Point Century Schoolbook.

/s/  Daniel T. Young

DANIEL T. YOUNG
Appellate Counsel

Dated:  October 27, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2023, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system, thereby accomplishing service on all participants who are registered CM/ECF users.

I will also email a copy of this pleading to Shalini Ahmed at shalini.ahmed@me.com and to:

> David P. Friedman
> Murtha Cullina, LLP
> 177 Broad Street, 4th Floor
> Stamford, CT 06901
> dfriedman@Murthalaw.com

> *Counsel in district court for Relief Defendants I-Cubed Domains, LLC, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC, DIYA Real Holdings, LLC, and three minor children by and through their next friends Iftikar and Shalini Ahmed, their parents*

/s/ Daniel T. Young

DANIEL T. YOUNG
Appellate Counsel

Dated: October 27, 2023

18